UNITED STATES of America, Appellee,

v.

Joseph George SHERMAN, Appellant.

No. 172, Docket 24342.

United States Court of Appeals Second Circuit.

Argued Dec. 10, 1956.

Decided Feb. 4, 1957.

Henry A. Lowenberg, New York City, for appellant.

Paul W. Williams, U. S. Atty. for Southern Dist. of New York, New York City (Malcolm Monroe and Maurice N. Nessen, Asst. U. S. Attys., New York City, of counsel), for appellee.

Before SWAN, MEDINA and WATERMAN, Circuit Judges.

MEDINA, Circuit Judge.

This appeal is from a judgment of conviction under an indictment charging sales of narcotics on three occasions in violation of 21 U.S.C.A. § 174. The evidence established the following facts: appellant and one Kalchinian, both addicted to the use of narcotics, became acquainted as a result of meeting several times in the office of the physician whom they were consulting in an effort to cure their addiction and in the pharmacy to which they took their prescriptions to be filled. After several casual greetings, they began to discuss their experiences in the use of narcotics. In response to a question, appellant told Kalchinian that he was then purchasing drugs. Kalchinian, who was not responding well to treatment, informed appellant of this fact and requested an introduction to appellant's supplier. After two or three such requests, appellant stated that the man was going out of business and for this reason he could not introduce appellant to him. Upon Kalchinian's asking, "How can I then?" appellant said he might be able to get some drugs for him. To a subsequent inquiry appellant replied that he was working on it. Kalchinian asked how he could get in touch with appellant, but appellant suggested instead the following procedure. If and when he had drugs for Kalchinian he would telephone him and tell him what time to meet him. Appellant took Kalchinian's telephone number and designated a certain street corner as the meeting place. He said that he expected to purchase heroin at $25 for ⅛ ounce and that he would let Kalchinian have half that amount for $15, explaining that the additional $2.50 was for his cab fare and trouble. Kalchinian agreed to these arrangements, and several transfers took place. Later Kalchinian, who was awaiting sentence on a narcotic charge to which he had pleaded guilty and who had previously worked with the Federal Bureau of Nar-

cotics on two cases, for the first time informed the Bureau of his dealings with appellant.

On the three dates charged in the indictment, agents observed Kalchinian exchange $15 for a small quantity of heroin contained in a glassine envelope concealed in an empty cigarette package. The government also proved, over appellant's objection, that he had twice before been convicted on narcotic charges: in 1942 for selling opium and in 1946 of possession of 720 grains of morphine in 5-grain capsules, 261 grains of heroin in six cellophane bags, and two ounces of opium in three jars.

■ The principal issues on this appeal revolve about the defense of entrapment. The Supreme Court has held "the controlling question" under this defense to be "whether the defendant is a person otherwise innocent whom the government is seeking to punish for an alleged offense which is the product of the creative activity of its own officials." Sorrells v. United States, 287 U.S. 435, 451, 53 S.Ct. 210, 216, 77 L.Ed. 413. Thus, if it be shown without more that the defendant was induced by government agents to engage in the proscribed activity, no conviction may be had. United States v. Masciale, 2 Cir., 236 F.2d 601; United States v. Sherman, 2 Cir., 200 F.2d 880. But "the defense of entrapment is not simply that the particular act was committed at the instance of government officials. That is often the case where the proper action of these officials leads to the revelation of criminal enterprises." Sorrells v. United States, supra. "There is no entrapment when a purchase is made at the instance of the law officers where the seller is ready and willing, without persuasion and awaiting any propitious opportunity, to commit the offense." United States v. White, 2 Cir., 223 F.2d 674, 676.

On a prior appeal in the case at bar, United States v. Sherman, supra, Judge Learned Hand stated, 200 F.2d at page 882:

"As we understand the doctrine it comes to this: that it is a valid reply to the defence, if the prosecution can satisfy the jury that the accused was ready and willing to commit the offence charged, whenever the opportunity offered. In that event the inducement which brought about the actual offence was no more than one instance of the kind of conduct in which the accused was prepared to engage; and the prosecution has not seduced an innocent person, but has only provided the means for the accused to realize his preexisting purpose. The proof of this may be by evidence of his past offences, of his preparation, even of his 'ready complaisance.' Obviously, it is not necessary that the past offences proved shall be precisely the same as that charged, provided they are near enough in kind to support an inference that his purpose included offences of the sort charged."

■ On that appeal we set aside appellant's conviction because of error in the charge. This error was corrected on the second trial and the evidence was sufficient to warrant a finding "that the accused was ready and willing to commit the offence charged, whenever the opportunity offered." The jury was justified in regarding appellant's hesitancy as no more than prudent caution on the part of an experienced trafficker in narcotics. Certainly his *modus operandi* suggested such experience. Nor was the jury bound to accept appellant's statement that the sales were without profit. Kalchinian testified that he had obtained the same quantities from his prior supplier at lower rates. Appellant's prior convictions were of course cogent evidence of a predisposition to commit the offenses charged. Appellant's last conviction was in 1946, five years before the offenses charged, but he does not appear to have strayed far from the trade. He was obtaining drugs illegally during the intervening period and it was a permissible inference that he had not changed his ways. In this connection it may be noted

that his second conviction was separated from the first by a gap of four years and that the fact that he continued to traffic in narcotics following his first conviction indicated a disposition to continue his trade despite detection and punishment.

Appellant contends that evidence of these prior convictions was improperly admitted since "It is elementary that the convictions of a defendant may be received in evidence only if the defendant testifies in his own behalf or introduces evidence of good character." But, there are exceptions to this rule, 2 Wigmore, Evidence §§ 300–373, and one of them is that such evidence is admissible to negative the defense of entrapment. The Supreme Court stated in Sorrells v. United States, supra [287 U.S. 435, 53 S.Ct. 216], "The predisposition and criminal design of the defendant are relevant. * * * if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue. If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense."

Justice Roberts dissented in Sorrells and Justices Brandeis and Stone joined in his dissent. The theory of the dissenters was that it was the function of the court alone to determine the question of whether the court was being made "the instrument of wrong," due to fraudulent or improper conduct of law enforcement officers, and that the submission of the issue of entrapment with the other issues for a general verdict was in effect construing a penal statute "as containing an implicit condition that it shall not apply in the case of entrapment." This reasoning was supported by a further argument closely touching the case now before us. Justice Roberts commented on the fact that it was common practice in criminal trials in which the defense claimed entrapment to permit the government in rebuttal to show "that the officer guilty of incitement of the crime had reasonable cause to believe the defendant was a person disposed to commit the offense," and he continued 287 U.S. at page 458, 53 S.Ct. at page 219: "This procedure is approved by the opinion of the court. The proof received in rebuttal usually amounts to no more than that the defendant had a bad reputation, or that he had been previously convicted." All this was said to support the view of the dissenters that the crime as defined in the statute made no reference to entrapment, that such a question merely affected the purity of the judicial process which was matter for the court alone. But the argument was rejected, and it is thus clear, as thus stated by Justice Roberts, that it was the considered position of the majority of the Court that a defendant's prior convictions were admissible to negative the defense. We have explicitly adopted this rule. United States v. Sherman, supra; United States v. Johnson, 2 Cir., 208 F.2d 404, certiorari denied 347 U.S. 928, 74 S.Ct. 531, 98 L.Ed. 1080. See also Carlton v. United States, 9 Cir., 198 F.2d 795.

It has been argued that these decisions are not applicable here, since they deal only with the introduction of such evidence in rebuttal, whereas in the case at bar the evidence of prior convictions was admitted as part of the government's case in chief. But to understand these decisions as making the admissibility of such evidence always depend upon whether the defendant had introduced evidence would emasculate the rule and work grave prejudice to the government in cases where defendant, as here, elected to go to the jury on the proofs adduced by the prosecution in its case in chief. Accordingly, we reject appellant's contention that no evidence of a predisposition to commit the crime and no proof of prior convictions may ever be introduced by the government except in rebuttal to affirmative evidence of entrapment adduced by defendant. But we are not called upon to, nor do we, propound any broad general rule on the subject. We do not now hold that evidence of predisposition or prior convictions may be introduced

by the prosecution whenever there is a possibility that entrapment will be invoked as a defense.

"This is one of those classes of cases where it is safer to prick out the contour of the rule empirically, by successive instances, than to attempt definitive generalizations." In re All Star Feature Corp., D.C., 231 F. 251 (L. Hand, J.).

 We now need go no further than to hold that proof of prior convictions is admissible as part of the prosecution's case in chief where it is clear, as in the case before us, that the defense will be invoked.

There can be no doubt that such was appellant's intention in the case at bar. On the first trial, he introduced no evidence but requested a charge on entrapment, relying on the testimony of Kalchinian. When his attorney was informed by the prosecutor that Kalchinian would not testify on the second trial, he demanded that the government call him again, evidently so that he could again rely on the defense. He informed the court that he would do so, and devoted his entire opening statement to a denunciation of Kalchinian, telling the court and jury that appellant had been entrapped. His cross-examination was of the same pattern, bringing out the facts relevant to entrapment.

Under these circumstances it was proper for the government to introduce evidence of the prior convictions.

■ Appellant further contends that, because of the passage of time between the prior convictions and the offenses charged, the evidence should have been excluded as unduly prejudicial. We disagree. While it is doubtless true that the more remote the prior convictions the less their probative force, we are not prepared to say that on this record the probative force of these prior convictions was outweighed by the possibility that they might prejudice the jury. Cf. Enriquez v. United States, 9 Cir., 188 F.2d 313.

■ Appellant's only other contention is that the transfers proven were not "sales" within the meaning of the statute, since the evidence showed that appellant was sharing the narcotics without profit. This contention must fail, for: (1) the jury may have believed that appellant was making the transfers and disbelieved his reported statement that he was doing so without profit; and (2) the statute enjoins all sales, not merely sales for profit.

Affirmed