Jasen, J.
The principal issues on this appeal involve the admissibility of evidence of prior crimes as part of the People’s case in chief where the defendant has raised the defense of entrapment, and the jurisdiction of the- trial court to hear and determine the charge against the defendant.
Defendant was convicted, after a trial by jury, in Justice Court, Town of Ramapo, of taking deer in violation of section 152 (subd. [1]) of the Conservation Law.[1] At the trial, the People’s case was based primarily on the testimony of a Deputy Sheriff of Rockland County and two State conservation officers. Deputy Sheriff Francis Butrico testified that in January, 1969, the defendant had admitted to him that he had recently taken three white-tailed doe deer, and that the defendant arranged a meeting place for the delivery of these deer to him. Butrico further testified that on January 14,1969, at approximately 6:30 in the evening, he arrived at the intersection of Maple Avenue and Route 306 in the Town of Ramapo, Rockland County. *256 Accompanying Butrico in Ms ear was Conservation Officer Howard Wendler, and following them in another car was Conservation Officer Anthony Mazza. At the time of their arrival, the defendant was already present. According to the testimony of Butrico, Mazza and Wendler, the defendant then led them to an abandoned bungalow near the intersection, and brought out three white-tailed doe deer. As he began to place the deer ip. the back of Mazza’s stationwagon, the defendant was placed under arrest.[2]
On cross-examination of Butrico, defense counsel subjected him to lengthy questioning. As indicated by the majority of his questions, an attempt was made to establish that Butrico induced the defendant to take part in an illegal transaction when otherwise he would not have done so. In response to these questions, Butrico admitted on cross-examination that he had discussed with the defendant on numerous occasions during the months of November, December and January, the possibility of the defendant ‘ ‘ getting ’ ’ some deer for him.
The People, thereupon, introduced into evidence, over objection, testimony of admissions made by the defendant that he had killed 181 deer during the past two years and certified conviction records showing that the defendant had been convicted of illegally taking wild life during the closed season on two prior occasions. This evidence was admitted by the trial court solely on the issue of entrapment which, the People argued and the court agreed, the defendant raised, prior to trial, by way of pleading an affirmative defense. In addition, the People contended the defense attempted to establish that defense in its opening to the jury, as well as on cross-examination of Butrico, the People’s first witness.
After the introduction of this evidence, the People rested. While the defendant did not take the stand, his wife testified that during the month of January, Deputy Sheriff Butrico called their home “ many times ” and repeatedly asked whether Larry had obtained the deer he wanted.
Upon this evidence, the defendant was convicted of illegally taking deer out of season, and pursuant to section 387 (subd. *257 [4]) of the Conservation Law, which designates this offense as a misdemeanor, he was sentenced to six months’ imprisonment.
Initially, we turn to defendant’s jurisdictional argument — that the Justice Court was without jurisdiction to hear and determine the misdemeanor of which the defendant was convicted. The contention is premised on section 386 (subd. [3], par. [b]) of the Conservation Law, which provides, in pertinent part, that Courts of Special Sessions[3] shall not have jurisdiction of misdemeanors specified in section 387 (subd. [4]) of the Conservation Law, and section 386 (subd. [3], par. [a]) of the Conservation Law, which specifies that only courts of record[4] may impose the fines and imprisonments enumerated in section 387 (subd. [4]) of the Conservation Law. The People, on the other hand, urge that paragraphs (a) and (b) of subdivision (3) were impliedly repealed by the enactment of the Uniform Justice Court Act (UJCA) (L. 1966, ch. 898, eff. Sept. 1, 1967), which specifically granted all town and village courts of the State, regardless of the name applied to such a court, trial jurisdiction of all misdemeanors. (UJCA, § 2001, subd. [a][5]; UJCA, § 2300, subd. [b], par. 1.)
In determining whether one statute impliedly repeals an earlier one, the primary and fundamental question to be resolved is what did the Legislature intend. (People ex rel. Bronx Parkway Comm. v. Common Council, 229 N. Y. 1, 8; People v. Dwyer, 215 N. Y. 46, 51; Matter of Tiffany, 179 N. Y. 455, 457; cf. Abood v. Hospital Ambulance Serv., 30 N Y 2d 295.) Since *258 repeal by implication is not favored (see, e.g., Naramore v. State of New York, 285 N. Y. 80, 84; Matter of Washington St. Asylum & Park R. R. Co., 115 N. Y. 442, 449; 1 Sutherland, Statutory Construction [1943 ed.], § 1913, at p. 366)[6], it will be decreed only where the intent to effect such a repeal is clear. (Cimo v. State of New York, 306 N. Y. 143, 148; City of New York v. Maltbie, 274 N. Y. 90, 97; Smith v. People, 47 N. Y. 330.) Such an intent, however, will be clearly manifested by an inconsistency between the statutes which is such as to preclude giving effect to both. (See Matter of Board of Educ. of City of N. Y. v. Allen, 6 N Y 2d 127, 141-142; People v. Thames & Mersey Mar. Ins. Co., 176 N. Y. 531; Mongeon v. People, 55 N. Y. 613, 615; McKinney’s Cons. Laws of N. Y., Book 1, Statutes, § 398.) Expressed another way, a more general statute (like UJCA, § 2001, subd. [a]) will not repeal a more specific one (like Conservation Law, § 386, subd. [3], pars. [a], [b]), unless there be a patent inconsistency and the two cannot stand together, so that the “Legislature is clearly shown to have intended such a result ”. (Cimo v. State of New York, 306 N. Y. 143,149, supra; People ex rel. Fleming v. Dalton, 158 N. Y. 175, 184; People ex rel. Savory, Inc. v. Plunkett, 295 N. Y. 180, 183; Crawford, Statutory Construction [1940 ed.], § 311.)
In the instant case, subdivision (3) (pars, [a], [b]) of section 386 of the Conservation Law and UJCA section 2001 cannot both be enforced. The former prohibits the Justice Court, Town of Bamapo, from entertaining- jurisdiction of misdemeanors specified in section 387 (subd. [4]) of the Conservation Law, while the latter vests this court with jurisdiction to try all misdemeanors. Consequently, under the rule stated above, the conflict between section 386 (subd. [3], pars, [a], [b]) of the Conservation Law and UJCA section 2001 (subd. [a]) must be resolved by holding that the latter impliedly repealed the former insofar as they are inconsistent, with the result that the latter *259 is controlling.[7] The Justice Court, therefore, did have jurisdiction of the crime of which the defendant was convicted.
We turn now to the question of whether the defense of entrapment[8] may he properly rebutted upon the People’s case in chief.
At the outset, it should be noted that while ordinarily evidence of other criminal acts of a defendant are inadmissible (Richardson, Evidence [9th ed.], § 175; 1 Jones, Evidence [1958 ed.], § 162), there are instances where such evidence is, in fact admissible. (See, e.g., People v. Molineux, 168 N. Y. 264; 2 Wigmore, Evidence [3d ed.], §§ 300-373; McCormick, Evidence [1954 ed.], § 157, p. 327.) One of these instances, we recently held in People v. Calvano (30 N Y 2d 199), is that such evidence is admissible to refute the defense of entrapment asserted against *260 the crime charged. As the Supreme Court stated in Sorrells v. United States (287 U. S. 435, 451-452): “The predisposition and criminal design of the defendant are relevant * * * if the defendant seeks acquittal by reason of entrapment he cannot complain of an appropriate and searching inquiry into his own conduct and predisposition as bearing upon that issue. If in consequence he suffers a disadvantage, he has brought it upon himself by reason of the nature of the defense.” (See, also, 1 Wigmore, Evidence [3d ed.], § 58; A.L.I., Model Penal Code [Tent. Draft No. 9, May 8, 1959], § 2.10, Comments at p. 21; Comment, Entrapment Doctrine in the Federal Courts and Some State Court Comparisons, 49 J. Crim. L., C. & P. S. 447, 450-452.)
Defendant, acknowledging the Calvano rule, and that the People’s evidence relating to this exception was competent, argues that the trial court nevertheless erred when it permitted the introduction of such evidence as part of the People’s direct case. In short, he urges that our court should embrace the position that no evidence of a predisposition to commit the crime may ever be introduced by the People, except in rebuttal to affirmative evidence of entrapment adduced ‘ ‘ during the defense portion of the case and after the People have rested.”
Since this position would, as the Second Circuit noted in United States v. Sherman (240 F. 2d 949, 952, revd. on other grounds 356 U. S. 369) “ emasculate the rule and work grave prejudice ” to the People where a defendant would go to the jury on the entrapment issue on the proof adduced by the People on its direct case (see, e.g., Sherman v. United States, 356 U. S. 369, supra), or on the proof elicited by cross-examination of the People’s witnesses (see, e.g., United States v. Brown, 453 F. 2d 101; Reece v. United States, 131 F. 2d 186), it should be rejected.
The better view, it seems to us, would be to admit competent proof of criminal disposition and prior convictions as part of the People’s direct case when it is “ clear that the defense of entrapment will be invoked.” (A.L.I., Model Penal Code [Tent. Draft No. 9], supra, at p. 21; United States v. Sherman, 240 F. 2d 949, 953, revd. on other ground 356 U. S. 369, supra; United States v. Brown, 453 F. 2d 101, supra; and see Orfield, The *261 Defense of Entrapment in the Federal Courts, 1967 Duke L. J. 39, 60.) This approach represents, in our opinion, a balance between the probative value of evidence of criminal disposition, and the danger of prejudice which it presents to the accused. Reason suggests, of course, that this holding should not always be mechanically applied, but controlled in some reasonable manner by the trial court. (Cf. People v. Calvano, 30 N Y 2d, at p. 206; United States v. Johnston, 426 F. 2d 112, 114; Hansford v. United States, 303 F. 2d 219, 226.)
With this principle in mind, we turn to the case before us. Not only did the defendant raise the affirmative defense of entrapment by way of a pretrial pleading, but also his counsel’s opening statement to the jury was primarily directed at a denunciation of the police conduct, declaring that his client had been unlawfully entrapped. Moreover, his cross-examination of the People’s witnesses was concerned solely with developing facts relevant to the defense of entrapment. Indeed, from the reasonable inferences which could be drawn from Butrico’s testimony that he repeatedly contacted the defendant and discussed with him the possibility of “ getting” deer, a prima facie case of entrapment had been established during the People’s case, requiring the submission of this question to the jury.[9] In other words, there was evidence before the court which tended to show the defendant was ‘ ‘ enticed * * * into committing the crime, and that without such enticement defendant would not have been disposed to commit the crime ”. (People v. Laietta, 30 N Y 2d 68, 76.) Under these circumstances, it is clear that the defendant intended to invoke the defense of entrapment. Therefore, the trial court did not err when it permitted the evidence relating to the defendant’s criminal predisposition to be introduced on the People’s direct case.
Defendant’s remaining arguments are insubstantial, and not such as to require discussion.
Accordingly, the order appealed from should be affirmed.
Concur: Chief Judge Fuld and Judges Bubke, Scileppi,
Bergan, Breitel and Gibson concur.
Order affirmed.

. “ § 152. Application of Fish and Game Law.— (1) No person shall, at any time of the year, pursue, take, wound or kill in any manner, number or quantity, any fish protected by law, game, protected wildlife, shellfish, Crustacea protected by law, or protected insects, except as permitted by the Fish and Game Law.”

. At this time the hunting season in Rockland County was closed.

. As both, the People and defendant agree, the Justice Court, Town of Ramapo, does sit as a “court of special sessions (See, generally, Practice Commentary by Richard G. Denser, McKinney’s Cons. Laws of N. Y., Book 11A, Criminal Procedure Law, § 10.10, pp. 34-35; Proposed New York Criminal Procedure Law, Commission Staff Notes [McKinney’s Pamphlet, 1967], pp. 32-33.)

. The Justice Court, Town of Ramapo, is not a “court of record”. (Judiciary Law, § 2.)

. UJCA (§ 2001, subd. [a]) provided, in pertinent part: “(a) Court of special sessions. The court shall * * * have original jurisdiction of all misdemeanors * * * committed at any place within the municipality.” (By L. 1971, ch. 1097, §120, eff. Sept. 1, 1971, UJCA, § 2001 was amended in order to conform the UJCA to the Criminal Procedure Law. As the memorandum of the Commission on Revision of the Criminal Procedure Law indicates, this amendment did not effect any substantive change from prior law.)

. Indeed, we have held that the absence of an express provision in a later statute, for repeal of an earlier one, gives rise to a presumption that repeal was not intended. (Chatham, Phenix Nat. Bank v. Crosney, 251 N. Y. 189; Grimmer v. Tenement House Dept., 204 N. Y. 370; People ex rel. Kingsland v. Palmer, 52 N. Y. 83; and see McKinney’s Cons. Laws of N. Y., Book 1, statutes, § 391, p. 558.)

. This conclusion is amply supported by the legislative history of both the Criminal Procedure Law and the UJCA, which indicates that the Legislature, cognizant of the criticism directed at the jurisdictional limitations of' town and justice courts under sections 56, 56-a, 56-b of the Code of Criminal Procedure (see Proposed New York Criminal Procedure Law, Commission Staff Notes, McKinney’s Pamphlet, p. 36) intended to empower these lower courts with jurisdiction to try all misdemeanors and petty offenses. (See Fifth Interim Report, Temporary Comm. on Revision of the Penal Law and Criminal Code [N. Y. Legis. Doc., 1966, No. 28, Feb. 1, 1966], pp. 14-18; Sixth Interim Report, Temporary Comm. on Revision of the Penal Law and Criminal Code [N. Y. Legis. Doc., 1967, No. 6, Feb. 1, 1967], p. 8; Memorandum of the Judicial Conference, McKinney’s N. Y. Session Laws, 1966, p. 2935; Practice Commentary by Richard G. Denzer, McKinney’s Cons. Laws of N. Y., Book 11A, Criminal Procedure Law, § 10.30, p. 42.) Thus, whatever reason may have underlied the limitation prescribed by section 386 (subd. [3], pars. [a], [b]) of the Conservation Law at the time of its enactment (see Memorandum of Joint Legislative Committee on Revision of the Conservation Law, N. Y. Legis. Doc., 1957, No. 11, McKinney’s N. Y. Session Laws, 1957, pp. 2158-2162; see, generally, Report of Joint Legislative Committee on Revision of the Conservation Law, N. Y. Legis. Doc., 1956, No. 11), the Legislature has deemed it to be no longer viable.

. Section 40.05 of the Penal Law provides: “In any prosecution for an offense, it is an affirmative defense that the defendant engaged in the proscribed conduct because he was induced or encouraged to do so by a public servant, or by a person acting in cooperation with a public servant, seeking to obtain evidence against him for purpose of criminal prosecution, and when the methods used to obtain such evidence were such as to create a substantial risk that the offense would be committed by a person not otherwise disposed to commit it. Inducement or encouragement to commit an offense means active inducement or encouragement. Conduct merely affording a person an opportunity to commit an offense does not constitute entrapment.”

. The question was, in fact, submitted to the jury, without objection.