IRA M. BALL, Respondent-Appellant, v STATE OF NEW YORK, Appellant-Respondent. (Claim No. 59498.)

Third Department, April 29, 1976

*Louis J. Lefkowitz, Attorney-General (William J. Kogan* and *Ruth Kessler Toch* of counsel), for appellant-respondent.

*Ira M. Ball,* respondent-appellant *pro se.*

SWEENEY, J. Claimant was appointed Chairman of the New York State Bingo Control Commission in June of 1962 when the commission was established and has continued to serve in that position ever since via subsequent five-year appointments. His present term expires June 1, 1979.

In the 1975 Executive Budget the Governor recommended abolition of the Bingo Commission and transfer of the regulation and control of bingo to the State Racing and Wagering Board. A bill implementing this recommendation passed only one house of the Legislature. The 1975-1976 State budget provided no funds for the Bingo Commission (L 1975, ch 50). There was, on the other hand, an appropriation to the State Racing and Wagering Board for "Regulation of Wagering" for "Personal service—regular", an amount which represented an increase of some $236,000 over such appropriation in the 1974-1975 State budget.

Since April 1, 1975, claimant has received no salary or expense payments. The offices of the Bingo Commission have been dismantled and, although claimant performed services

for the commission as best he could from April 1, 1975 to July 16, 1975, he ceased performing such services when Bingo personnel was ordered by the Racing and Wagering Board personnel not to perform services for claimant, nor to give him any information. Claimant filed a claim in the Court of Claims on July 29, 1975, seeking salary and expenses from April 1, 1975 to the date of filing of said claim. Claimant's motion for summary judgment to the extent that he is enti-tled to the appropriate amount of his unpaid salary, plus interest, was thereafter granted.

On this appeal claimant has withdrawn his cross appeal. The State first contends that the Court of Claims lacked jurisdiction to determine the claim in the absence of a judgment of the Supreme Court reinstating claimant to his position as Chairman of the State Bingo Commission. We disagree. Claimant's removal was not accomplished by a body or officer against whom an article 78 proceeding would lie. Nor would an article 78 proceeding in the nature of mandamus to compel the Comptroller to pay claimant's salary be effective. The comptroller cannot audit a claim for salary unless an appropriation applicable thereto has been made. (State Finance Law, § 43.) Where the Comptroller has refused to audit a claim for salary because no money has been appropriated, the Court of Claims should determine such claim. (O'Neil v State of New York, 223 NY 40.) Since it is alleged that the State owes claimant money, the Court of Claims has jurisdiction of the subject matter and it is the only forum in which the State has consented to be sued. (Friedman v State of New York, 24 NY2d 528, 536.)

The central issue on this appeal is whether claimant's position was abolished by the Legislature upon the enactment of the 1975-1976 State budget bill (L 1975, ch 50). Claimant's position was statutorily created and his term of office, salary and duties statutorily prescribed. (Executive Law, art 19-B, § 169, subd [j].) The abolishment of such a position may be accomplished only by direct action of the Legislature (Matter of Friedman v D'Antoni, 50 AD2d 9, app dsmd 38 NY2d 1002). The State urges that the passage of chapter 50 of the Laws of 1975 constituted such direct action by the Legislature and claimant's position was thereby effectively abolished. It points to the Executive Budget, a joint report by the Senate Finance Committee and the Assembly Ways and Means Committee and to circumstances surrounding the enactment of such

budget bill to demonstrate the required legislative intent to abolish claimant's position. Claimant, on the other hand, asserts that since there was a failure to pass legislation specifically designed to abolish his position, it was not abolished. We agree. We do not find the direct legislative action necessary to abolish claimant's position in the enactment of the 1975-1976 State budget, nor would a repeal by implication of article 19-B of the Executive Law by such statute because of failure to appropriate funds for claimant's salary, constitute such direct action.

While the appropriations set forth in the 1975-1976 budget were determined on the basis of the Governor's recommendations in his Executive Budget and no appropriation was included therein for the Bingo Commission, the State cannot deprive claimant of the salary for his fixed-term position as prescribed by the Executive Law by refusing to appropriate funds therefor. The Legislature must abolish such a statutorily fixed-term position by a legislative act which specifically provides therefor and states in explicit language that such is the intent. In the case before us we are not dealing with the abolition of positions in the civil service and the transfer of functions of agencies where no funds had been appropriated by the Legislature, as was the case in *Matter of Lorraine v Carey* (Sup. Ct., Albany County, April 1975, GIBSON, J.), relied on by the State. (Cf. *People ex rel. Davison v Williams,* 213 NY 130.) The case of *Church of Ascension and Church of Holy Name of Jesus v New York State Racing and Wagering Board* (NYLJ, Jan. 22, 1976, p 8, col 2) is not inconsistent. There the court held that chapter 50 of the Laws of 1975 effectively implemented the Governor's recommendation to abolish the Bingo Commission and transfer its functions to the racing board. There was no issue in that case concerning the abolition of the position of the Chairman of the Bingo Commission which was statutorily created for a definite term of years.

The judgment should be affirmed, with costs.

HERLIHY, J. (concurring). I agree with the conclusion of the majority that the direct legislative action necessary to abolish the claimant's position is not established by the facts and circumstances of this case. I do not agree, however, with the assertion that a repeal by implication of article 19-B of the Executive Law would not also abolish the claimant's position and preclude his right to recover unpaid salary. The sole right of claimant to his salary would be his appointment for a five-

year term and the repeal of article 19-B would necessarily shorten his term to the time already served by direct action of the Legislature. For the following reasons, I have concluded that the legislative action involved in this case did not repeal section 433 of the Executive Law.

The general rule as to repeal by implication is that "Repeals of earlier statutes by implication are not favored and a statute is not deemed repealed by a later one unless the two are in such conflict that both cannot be given effect." (McKinney's Cons Laws of NY, Book 1, Statutes, § 391; *Matter of Corning v Donohue,* 29 NY2d 209, 215.) "The absence of an express provision in a later statute, for repeal of an earlier one, gives rise to a presumption that repeal was not intended [citation omitted]. If by any fair construction, both statutes can be given operation, implied repeal will not be declared * * * a more general statute * * * will not repeal a more specific one * * * unless there be patent inconsistency and the two cannot stand together, so that the Legislature is clearly shown to have intended such a result [citations omitted]". *(Cimo v State of New York,* 306 NY 143, 148-149; see, also, *People v Mann,* 31 NY2d 253, 258.)

"[T]he primary and fundamental question to be resolved is what did the Legislature intend." *(People v Mann, supra,* p 257.)

Upon its face the budget bill does not purport to repeal any of the provisions of article 19-B. The appropriation for "personal service—regular" for the State Racing and Wagering Board was a lump sum in 1975 and the appropriation for the Department of State was in the same form. Pursuant to the provisions of article VII of the Constitution it appears that in connection with the budget bill, the Legislature could have repealed article 19-B or specifically abolished any personnel provisions therein as being related to the appropriation requested and granted. Unlike other legislation, the budget bill for the Executive Department becomes law immediately upon its passage by the Legislature and without approval by the Governor. In connection with the budget, the Governor did submit specific legislation abolishing the Bingo Commission and transferring its powers to the Racing and Wagering Board as well as repealing sections 433 and 439-b of the Executive Law. *The Legislature did not pass that legislation.*

The joint report of the finance committees recites that the proposed transfer of 14 Bingo Investigator positions is denied

and/or abolished and a new position "Director of Division of Bingo" was approved. The report said his duties were to "design and clarify the State's regulatory activities related to Bingo Control and Local Enforcement responsibilities". (Report of Sen. Finance Committee and Assembly Ways and Means Committee on Proposed Budget Reductions, 1975, p 85.) The report, however, does not recite that the Bingo Commission was to be abolished or that any particular Bingo Commission powers were to be transferred to the Racing and Wagering Board. The report states (p ii) "In reading the narrative, it should be noted that all agency programs may not be listed."

The legislative action in the present case does not establish any *clear* intent on its part to abolish the Bingo Commission. Section 433 is a special or specific statute and the budget bill is a general statute. It is entirely possible to transfer certain functions to the Racing and Wagering Board without abolishing the commission. Indeed, the new Director of Division of Bingo in the Racing and Wagering Board was merely directed to design and clarify regulatory activities by the joint report. This could be a service to the Bingo Commission even though he is placed in the Racing and Wagering Board. Section 434 of the Executive Law provides for assistance to the Bingo Commission from other agencies or departments.

The conclusion that the Legislature had no specific intent to abolish the Bingo Commission and in particular the claimant's position as fixed in section 433 of the Executive Law has further support by later action of the same Legislature. In August of 1975 chapter 667 of the Laws of 1975 was approved and became law, *retroactive to April 1, 1975,* and section 16 thereof repealed subdivision (e) of section 169 of the Executive Law and relettered the subdivision which recites the title of "chairman of state bingo control commission" without striking that title from the statute. By implication, the legislative intent as expressed in August of 1975 and retroactive to April 1, 1975 was that the claimant's position was *not* abolished.

The specific legislation introduced in the Legislature did not pass in the Senate and, therefore, did not become law. On the record it is impossible to conclude that the passage of the budget bill, by implication, abolished the claimant's position.

The judgment appealed from should be affirmed.

MAHONEY, J. (concurring in part and dissenting in part). We concur with that portion of the majority's decision that

holds that the Court of Claims had jurisdiction of the subject matter and was the proper forum for litigation of the issue before us.

We dissent from the substantive holding by the majority that enactment of the 1975-1976 State budget bill did not abolish claimant's position as Chairman of the New York State Bingo Control Commission.

The specificity required by the majority, i.e., the passage of the budget bill implementing the Governor's intention, evidenced by the 1975 Executive Budget, of abolishing the position of Chairman of the New York State Bingo Control Commission, in our view, places the emphasis on form rather than substance. The 1975-1976 budget bill (L 1975, ch 50) is no less a statute than the bill specifically mentioning the subject position by title would have been had it been enacted.

Although a position legislatively created may be abolished only by statute (Matter of Sullivan v Taylor, 279 NY 364) and a failure to appropriate a salary for such a position is insufficient action to accomplish that end (Matter of Collins v City of Schenectady, 256 App Div 389; Timpano v Hanna, 77 Misc 2d 874, affd 44 AD2d 912), a statute, such as the 1975-1976 budget, which in addition to eliminating the salary for the subject position also evidences an intent to abolish the position itself by transferring all of the duties heretofore discharged by the Bingo Control Commission Chairman to the State Racing and Wagering Board, qualifies as the "direct action" by the Legislature requisite to the abolishment of the position statutorily created (Friedman v D'Antoni, 50 AD2d 9, app dsmd 38 NY2d 1002). Further evidence that such was the legislative intent can be gleaned from Exhibit F attached to the answering affidavit of claimant wherein both the Senate Finance Committee and the Assembly Ways and Means Committee, by initialling a memorandum from the Deputy Comptroller, affirmatively stated that it was legislatively intended "that the functions, powers and duties of the public officials * * * were * * * transferred to the departments and agencies receiving the appropriation." Clearly, it appears that the Governor intended and requested that the subject position be abolished and that the appropriate committees of the Legislature acquiesced in the Governor's recommendation by recommending for passage the 1975-1976 budget which, in fact, transferred all the functions, powers and duties of the Bingo Chairman to the State Racing and Wagering Board.

Since, in our view, the intention of the Legislature to abolish the subject position is clear, it is unnecessary to withhold approval of the legislative design merely because the statute could have been expressed more clearly. It is well settled that "[I]t is the duty of courts to adopt a construction of a statute that will bring it into harmony with the constitution and with legislative intent, and no narrow construction of a statute may thwart the legislative design." (McKinney's Cons Laws of NY, Book 1, Statutes, § 92.) In *Matter of River Brand Rice Mills v Latrobe Brewing Co.* (305 NY 36, 43), the court stated: "The intent of the Legislature in enacting legislation is the primary object to be found. Whenever such intention is apparent it must be followed in construing the statute * * * 'a case within the intention of a statute is within the statute, though an exact literal construction would exclude it.' " (See, also, *Matter of Wilson v Board of Educ., Union Free School Dist. No. 23, Town of Oyster Bay,* 39 AD2d 965, mod 32 NY2d 636; *Community School Bd. Dist. 3 of School Dist. of City of N.Y. v Board of Educ. of School Dist. of City of N.Y.,* 66 Misc 2d 739, affd 38 AD2d 932.)

In *People ex rel. Wood v Lacombe* (99 NY 43, 49), the Court of Appeals stated: "In the interpretation of statutes, the great principle which is to control is the intention of the legislature in passing the same, which intention is to be ascertained from the cause or necessity of making the statute as well as other circumstances. A strict and literal interpretation is not always to be adhered to, and where the case is brought within the intention of the makers of the statute, it is within the statute, although by a technical interpretation it is not within its letter."

Therefore, since the 1975-1976 budget (L 1975, ch 50) not only eliminates any appropriation for the subject position, but also eliminates any appropriation for the commission over which claimant had heretofore presided and, further, transfers all retained employees and the moneys for their salaries to another department and directs that that department discharge all the functions and duties heretofore delegated to the Bingo Commission, the legislative intent is abundantly clear. That legislative intent must be recognized by this court for any judicial construction to the contrary would be an impermissible interference with the functions of one branch of government by another.

The judgment should be reversed.

GREENBLOTT, J. P., concurs with SWEENEY, J.; HERLIHY, J., concurs in a separate opinion; MAHONEY and REYNOLDS, JJ., concur in part and dissent in part in an opinion by MAHONEY, J.

Judgment affirmed, with costs.