Frank S. Rossetti, J.
The instant application by claimant is for summary judgment on a claim for unpaid salary. The claim arises from the alleged illegal termination of claimant’s appointment as a member of the State Narcotic Addiction Control Commission (hereinafter "Narcotic Commission”).[1] The Narcotic Commission was established in 1966 primarily to develop and operate rehabilitation centers for narcotic addicts. (See L 1966, ch 192, amdg former art 9 of the Mental Hygiene Law.) It was to consist of five members "appointed by the governor, by and with the advice and consent of the senate.” (L 1966, ch 192, § 5, former Mental Hygiene Law, § 203, subd 1.) Each member had a term of five years and it was specified that "[t]he governor may remove any member * * * for cause after an opportunity to be heard” (subd 3).[2]
*825 On May 16, 1973 claimant was nominated as a Narcotic Commission member by then Governor Nelson A. Rockefeller. He was confirmed by the Senate on May 22, 1973, duly sworn in and assumed his duties. His appointment was for an initial term expiring December 31, 1973 and an additional five-year term due to expire December 31, 1978. However, on April 8, 1975 he received a letter of even date from the Governor’s secretary purporting to terminate his services. The letter stated the Governor "has now signed into law the legislation effecting” the elimination of the Drug Commission (see n 1) and announced "the termination of your [claimant’s] services.” In fact, the legislation abolishing the Drug Commission, and the members’ statutorily fixed salaries (see L 1975, ch 667, particularly §§ 7, 16)[3] did not become law until signed by the Governor on August 6, 1975.[4] (See L 1975, ch 667; NY Const, art IV, § 7.) Nonetheless, by its terms it was expressly made retroactive to April 1, 1975. (See L 1975, ch 667, § 50.)
The subject claim can be broken down into two causes of action. The first encompasses claimant’s allegations that the Governor’s termination of his services on April 8, 1975 was unlawful and that he is entitled to back pay of $11,507.68 for the period from April 21, 1975 to August 8, 1975.[5] The second cause of action encompasses the allegations that claimant was denied equal protection of the law and discriminated against because the former chairman and vice chairman of the Drug Commission were retained even though their terms as members of said commission were to expire prior to claimant’s. Also, claimant’s papers contend, for the first time, that said retention was arbitrary and capricious and, additionally, raise the argument that the 1975 legislation may not have been timely signed by the Governor and thus did not become law.[6] The damages alleged for this second cause of action are $14,744.22, for the period August 8, 1975[7] to December 31, 1975.
*826 On the papers submitted, the court finds summary judgment proper as to the first cause of action, but factual questions remain as to the appropriate damages therefor. As to the second cause of action, claimant’s conclusory allegations are clearly insufficient to warrant summary judgment and numerous issues remain with respect thereto. The bases for these findings shall be discussed seriatim.
A. FIRST CAUSE OF ACTION
Generally, a public officer appointed by the Governor by and with the advice and consent of the Senate is removable only by the Senate, except as otherwise provided by special provisions of law. (See Public Officers Law, § 32; People v Carrique, 2 Hill 93.) Here, of course, there was a special provision granting gubernatorial removal power, but only for cause after an opportunity to be heard. (See L 1973, ch 676, § 3, former Mental Hygiene Law, § 81.07, subd [c].) The April 8, 1975 letter from the Governor’s secretary did not (and did not purport to) comply with this provision. The State makes no argument with respect to this letter, but relies solely on the legislative abolition of the Drug Commission.[8] The court thus finds the would-be April 8 termination invalid and of no consequence herein.
The next issue is the effect to be given the subject legislation. Preliminarily, we find, on the basis of the proof at bar, that said legislation was enacted August 6, 1975. As noted, claimant questioned whether the subject law was in fact signed by the Governor. The statutorily specified evidence thereof is the Governor’s certificate (see Legislative Law, § 41), but such was not proffered herein. However, the official Session Laws of this State are required by statute to include the date a bill becomes law with the Governor’s approval. (See Legislative Law, § 44.) In view of this duty imposed by law and the strong presumption of regularity attached to the official acts of public officials (see, generally, 21 NY Jur, Evidence, § 108), and the prima facie status accorded the officially published Session Laws (see CPLR 4511, subd [d]), we deem it incumbent on claimant to establish by competent proof that the subject legislation was either not signed, or signed other than on the August 6 date specified in the Session Laws. *827 Claimant’s papers merely raise the issue and present no evidence with respect thereto. Obviously this is not the convincing proof required to rebut the said presumption of regularity (see 21 NY Jur, Evidence, § 109) or overcome the prima facie nature of the said official publication (see CPLR 4511, subd [d]). The court therefore finds the subject legislation became law August 6, 1975.
Turning to the pivotal issue in this cause of action (i.e., the legality of retroactively depriving claimant of his salary), we note it has been generally held that absent constitutional limitation, the Legislature can abolish an office of its creation and modify the term or other incidents thereof (see Lanza v Wagner, 11 NY2d 317, 324; 48 NY Jur, Public Officers and Employees, § 229), including compensation (see Nichols v MacLean, 101 NY 526, 533; 48 NY Jur, Public Officers and Employees, §§ 209, 212, pp 98-99). Further, retroactivity per se does not render a law invalid. (See McKinney’s Cons Laws of NY, Book 1, Statutes, § 51, subd e.) Nevertheless, the retroactivity of a statute cannot have the effect of violating constitutional prohibitions and, therefore, if contractual obligations or vested rights are impaired or destroyed by the ex post facto application of a law, such application will be constitutionally infirm. The right to enforce a legal cause of action is a vested right within said constitutional proscription and, consequently, once such right has accrued, its extirpation by retroactive legislation is constitutionally constrained. (See 16A CJS, Constitutional Law, § 417, pp 102-103.)
Generally, public office is not based on contract (see Fitzsimmons v City of Brooklyn, 102 NY 536, 538-539; 48 NY Jur, Public Officers and Employees, § 196), but the holder thereof is entitled to his salary as an incident of the office as long as he holds it and his right to salary is not necessarily dependent on the services performed (see Fitzsimmons v City of Brooklyn, supra; Nichols v MacLean, supra, pp 533-534, 537; 47 NY Jur, Public Officers and Employees, § 18; 48 NY Jur, Public Officers and Employees, § 197; 67 CJS, Officers, § 83). Here, claimant’s annual salary was statutorily fixed (at least to the extent of $37,200 — see n 9, infra) and, other than the subject legislation, the State has shown nothing disabling claimant from receipt thereof. Accordingly, just before the subject enactment became law on August 6, 1975, claimant had the right to sue for his unpaid and statutorily fixed salary up to that date. (See Friedman v State of New York, 24 NY2d 528, 536; Nichols v *828 MacLean, supra, p 534; 48 NY Jur, Public Officers and Employees, § 202.) This right to sue (cause of action) had thus accrued prior to the abolishing legislation and hence could not be retroactively destroyed thereby.
A further basis for claimant’s recovery of said salary arises from his allegations of performance of his duties during the period in question. Defendant has raised no issue with respect to such performance or the legislatively fixed value thereof. On the basis of this performance under statutory mandate, we believe claimant’s right to compensation accrued quasi-contractually up to the time the Legislature acted to revoke that mandate. (See, generally, 50 NY Jur, Restitution and Implied Contracts, § 73.) It is offensive to basic considerations of fairness and equity to permit an employer to retroactively deny compensation for services performed at its behest and for its benefit.
Defendant argues it was unreasonable for claimant to expect to be paid after April, 1975 because the Governor had previously recommended and introduced the legislation to abolish the Drug Commission. We find this argument inadequately supported and unconvincing. First, defendant has presented no proper evidence of the said previous recommendation and introduction. Second and more importantly, only the Legislature could effect the abolition of the commission (see n 8) and we think it was eminently reasonable for claimant to expect his salary to be continued until such legislative action was accomplished and effectuated by the Governor’s approval. Accordingly, we believe as of August 6, 1975 a valid claim on an implied in law contract existed for services performed theretofore. Such a claim has been characterized as a property right (see Carey v International Brotherhood of Paper Makers, 123 Misc 680, 687; 67 CJS, Officers, § 83) and as such is entitled to constitutional protection (see US Const, 14th Amdt, § 1; NY Const, art I, § 6). In any event, whether denominated a property, vested or accrued right, or a cause of action, and whether enforceable as an incident to claimant’s public office (and its statutorily fixed salary) or in equity on the basis of an implied in law contract, we deem claimant’s entitlement to his salary up to August 6, 1975 was of such a fixed and substantial nature that the destruction thereof by the retroactive application of the subject legislation was constitutionally impermissible. (See, also, Ball v State of New York, Ct of Claims, Claim No. 61322, Motion No. M-19953, filed Sept. 30, 1977, Alpert, J.)
*829 The court is aware of the general principle that a public officer has no vested, contract or property right in his office, such office being for the public’s benefit, not the incumbent’s. (See Lanza v Wagner, 11 NY2d 317, 324, supra; 47 NY Jur, Public Officers and Employees, § 11.) However, the court could find no case where this principle was used to justify the retroactive deprivation of a public office or the incidents thereof. Rather, we believe the proper interpretation and application of this principle is a prospective one, to wit, a holder of public office has no right to his continuance in office or to the continued enjoyment of the incidents thereof (see, e.g., Nichols v MacLean, 101 NY 526, 533, supra; 48 NY Jur, Public Officers and Employees, § 212, p 99). We can perceive no public benefit to be derived from granting the government the unfettered right to arbitrarily deprive its duly appointed officials of their statutorily pledged compensation for the past performance of their statutorily required duties. In fact, we think the public interest would be poorly served by permitting public officials to be so subject to legislative whim. We thus do not find the above-cited principle to be applicable to or inconsistent with our determination herein.
Therefore, the court finds chapter 667 of the Laws of 1975 constitutionally invalid to the extent, and only to the extent, it attempts to retroactively deprive claimant of his statutorily fixed salary. As a result, claimant is entitled to said salary up to August 6, 1975. However, the papers at bar do not present sufficient facts to enable the court to fix the unpaid amount thereof. Claimant alleges he was paid up to April 21, 1975 (a Monday), that the Governor signed the bill August 8, 1975 (a Friday), and that his annual salary was $37,400. The above damages of $11,507.68 equal 16 weeks of such salary. Conversely, the State alleges claimant was paid through April 21, 1975, that the bill was signed August 6, 1975 and that claimant’s annual salary was $37,200. We agree with the State as to the latter two factual discrepancies,[9] but there was not *830 sufficient evidence presented to enable us to make a finding with respect to the first such discrepancy. Also, there is no evidence of the manner in which claimant was paid and hence nothing to guide the court in the computation of damages (i.e., whether such computation should be on a daily, weekly, biweekly, monthly or other basis). Accordingly, unless the parties can stipulate to the amount of such damages, or submit additional evidence to enable the court to determine it, a hearing will have to be held (see CPLR 3212, subd [c]). The parties are thus being given an opportunity to submit such a stipulation or said additional evidence before an order is entered herein.
B. SECOND CAUSE OF ACTION
As noted, we find claimant’s papers inadequate to warrant summary judgment as to his salary after August 6, 1975. No facts have been presented as to the nature or manner of the retention of the two former Drug Commission members. Claimant’s conclusory allegations do not meet the evidentiary standard warranting judgment as a matter of law (see CPLR 3212, subd [b]). On the other hand, defendant has raised no argument with respect to the original and primary bases of this cause of action, to wit, denial of equal protection of the law and discrimination. Thus, while claimant may not have adequately evidentially supported the cause of action, defendant has presented nothing requiring its dismissal (see id.). Therefore, summary judgment is not warranted for either party.
On the basis of the foregoing, we find summary judgment proper for the first cause of action (for salary up to August 6, 1975) as to liability only, but not for the second cause of action (for salary from August 6, 1975 to December 31, 1975). Partial summary judgment and severance are thus called for (see CPLR 3212, subd [e]), but, because of the above-noted problem with respect to damages on the said first cause of action, we shall defer entering an order therefor until the parties have had an opportunity to submit papers resolving the said damage issue.
Accordingly, the parties shall have until 30 days after notice of filing hereof to submit to the court either: (a) a stipulation as to the amount of damages for the said first cause of action; or (b) additional evidence sufficient to enable the court to compute such amount, including evidence of (i) the period covered by claimant’s last salary payment, and (ii) *831 the basis on which claimant was customarily paid (i.e., daily, weekly, biweekly, monthly or otherwise). Upon timely receipt of such stipulation or evidence, or upon the parties’ failure to comply with said directive, the court shall enter an appropriate order in accordance with the foregoing.

. At the time of said termination, the Narcotic Commission had been replaced by the Drug Abuse Control Commission (hereinafter "Drug Commission”) but such change has no effect on the claim herein (see n 2, infra).

. The above-quoted and other provisions specifically concerning the terms and incidents of the members’ employment were unchanged in the 1972 recodification of the Mental Hygiene Law (see L 1972, ch 251, eff July 1, 1972, wherein former section 203 of article 9 of the old Mental Hygiene Law became section 81.07 of article 81 of the recodified Mental Hygiene Law) and the 1973 replacement of the Narcotic Commission by the Drug Commission (see L 1973, ch 676, § 3, eff Sept. 1, 1973, former Mental Hygiene Law, § 81.07, prior to amdt by L 1975, ch 667, § 7).

. This legislation replaced the Drug Commission with the Office of Drug Abuse Services in the Department of Mental Hygiene. This office was headed by a single commissioner who, although appointed by the Governor by and with the consent of the Senate, holds office at the pleasure of the Governor (see Mental Hygiene Law, § 81.07, subd [a]).

. See pp 826, 827, infra.

. This August 8 date is the date claimant alleges as the date of the supposed signing of the subject 1975 legislation by the Governor. As hereinafter found (see pp 826, 827, infra), this date was actually August 6, 1975.

. Claimant referred to the statutory period required by the Executive Law, but apparently the appropriate provisions are those in the State Constitution (see NY Const, art IV, § 7).

. See n 5.

. We note the Legislature had the sole power of abolition since the commission was created by statute and its members’ terms, salaries and duties were prescribed by statute. (See Ball v State of New York, 52 AD2d 47, 49, affd 41 NY2d 617.)

. As found above (see pp 826, 827), August 6,1975 was the date the subject legislation was signed by the Governor and became law. Claimant’s salary at the relevant times was set in the Executive Law at $37,200. (See Executive Law, § 169, subd [i], subsequent to the April 1, 1974 amdt in L 1974, ch 992, § 6, and prior to the subject legislation L 1975, ch 667, § 16.) The additional $200 claimant apparently received prior to April 21, 1975 was a locational adjustment he was not entitled to after his salary was set in the Executive Law in 1974. (See id.; L 1969, ch 333, § 15, amd L 1970, ch 456, § 1.)