■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v CHARLES DARRISAW, Appellant.—Judgment, Supreme Court, Bronx County, rendered June 10, 1977, convicting defendant of criminal sale of a controlled substance in the second degree and sentencing him to a term of imprisonment, reversed, on the law, and the case remanded for a new trial. Defendant Darrisaw is charged, in a three-count indictment, with criminal sale of a controlled substance in the second degree and criminal possession of a controlled substance in the third and fifth degrees. At trial, it was established that on September 17, 1976, at 139th Street and Cypress Avenue, he was accosted by one Soto, a registered police informant, who was accompanied by Machado, an undercover narcotics police officer. The three engaged in a brief conversation with respect to the purchase of narcotics, following which all three entered Machado's unmarked car and proceeded to 140th Street and St. Ann's Avenue. There, Darrisaw requested, and, through Soto, obtained funds from Machado. All three then exited from the vehicle. Darrisaw walked over to one Pasquale, and, after a brief conversation, made a payment to him. Pasquale directed Darrisaw to another man standing about 10 feet away who delivered two envelopes to him. Darrisaw turned over the envelopes to Machado and the three, Darrisaw, Soto and Machado, re-entered Machado's automobile and proceeded, at Darrisaw's direction, to 139th Street and Cypress Avenue. Darrisaw removed two bills from his pocket and folded them into pouches. He took one of the envelopes from Machado and poured a small amount of the contents of the envelope into each pouch. Thereupon, he returned the envelope to Machado. One pouch he gave to Soto and one he retained. He then left the car and Machado and Soto proceeded onward. So far as is disclosed by the record, neither Soto nor Machado had ever done business with Darrisaw prior to this incident. After the prosecution had rested, the court indicated to both counsel that he considered both possession counts to be inclusory concurrent counts (CPL 300.30, subd 4; *People v Grier,* 37 NY2d 847; *People v Lee,* 39 NY2d 388; *People v Anderson,* 60 AD2d 530; *People v Blake,* 58 AD2d 757); and that he intended to submit only the criminal sale count to the jury. Both the

prosecution and the defense voiced their objections to this procedure. Defense counsel then requested a ruling on his *Sandoval* motion *(People v Sandoval,* 34 NY2d 371). The confused colloquy which ensued led to a discussion of the agency defense, at which time defense counsel requested an agency charge. The court noted that if such a charge were to be given, the People would be entitled to present evidence of Darrisaw's prior narcotics background even if defendant did not take the witness stand. The claim by defendant that the court conditioned the agency charge on defendant's taking the stand, is not borne out by the record. However, it is clear that defendant never withdrew his request for the charge, nor having made it, did he waive the request by failing to except at the close of the charge. When the jury reconvened, the defendant rested. After summation, the court charged only the criminal sale count, omitting any reference to the agency defense. We hold that in the circumstances of this case, the failure to charge agency constituted reversible error *(People v Roche,* 45 NY2d 78; *People v Argibay,* 45 NY2d 45; *People v Lam Lek Chong,* 45 NY2d 64). As the Court of Appeals noted in *Argibay (supra,* p 55): so long as "there is at least some evidence, however slight, to support the inference that the supposed agent was acting, in effect, as an extension of the buyer" determination of the existence of an agency relationship should be submitted to the jury with appropriate instructions (see, also, *People v Roche, supra,* p 86). In the absence of testimony by the defendant that one of his purposes in assisting in the sale was the hope of future collateral advantage *(People v Lam Lek Chong,* 45 NY2d 64, *supra),* or admissions to a police officer that the profit motive was his underlying purpose in selling narcotics *(People v Argibay,* 45 NY2d 45, *supra),* we are unable to say as a matter of law that Darrisaw was not "an extension of the buyer". Of course, the trial court correctly pointed out to defense counsel that the agency defense opened the door to evidence that "the defendant has had other drug dealings with this or other buyers or sellers" *(People v Lam Lek Chong,* 45 NY2d 64, 75, *supra;* see, also, *People v Calvano,* 30 NY2d 199). Whether, in the event the defendant fails to take the stand, the method of demonstration by independent proof is proper is a question best reserved to another day when the issue is concretely formulated in a record disclosing the technique employed in the presentation of such evidence. (Cf. *People v Mann,* 31 NY2d 253, 256.) Since a new trial will be required, it becomes necessary to determine whether the defendant may be retried on the two possessory counts not submitted to the jury by the trial court. The failure of the trial court to present these counts in the face of the request by both counsel was error (CPL 300.50, subds 2, 3). The rule is clear that where a defendant is charged with a crime and is convicted of a lesser included offense which is subsequently reversed, the retrial is, of necessity, limited to the highest charge upon which defendant was convicted. The conviction on the lesser charge constitutes an acquittal of the higher charge (CPL 300.40, subd 3, par [b]), and, thus, a retrial on the higher charge constitutes double jeopardy *(Price v Georgia,* 398 US 323). Accordingly, retrial thereof will not be permitted *(People v Graham,* 36 NY2d 633; *People v Skinner,* 57 AD2d 785). However, the converse does not follow *(People v Jackson,* 20 NY2d 440, cert den 391 US 928). The possessory counts were not submitted because they were inclusory concurrent counts. As such it was impossible to commit the crime of criminal sale of a controlled substance in the second degree without at the same time committing the two possessory counts charged. Accordingly, the defense of double jeopardy is not applicable. In holding as we do we are not unmindful that CPL 300.40 (subd 7) so far as here applicable, provides

that "Every count not submitted to the jury is deemed to have been dismissed by the court". We hold only that a dismissal on the facts before us does not preclude a retrial of the lesser counts on the ground of double jeopardy. Concur—Sandler, J. P., Sullivan and Bloom, JJ.

Lupiano and Yesawich, JJ., dissent in a memorandum by Lupiano, J., as follows: I depart from the majority view which implicitly holds that there is some evidence on this record to support the inference that the defendant was acting as an extension of the buyer and that, in consequence, defendant was entitled to an agency charge. Comparison of the salient and relevant facts on this record with those in *People v Argibay* (45 NY2d 45) discloses such close analogy as to mandate a similar result herein. Essentially, I perceive *Argibay* as controlling. As stated by the Court of Appeals (p 50) "The principal issue on Argibay's appeal is whether, in a case involving sale of narcotics, the jury must be charged on agency when the evidence demonstrates that defendant's involvement in the transaction was, at least, that of a middleman or broker". The Court of Appeals concluded that "No charge on agency is required, or appropriate, when the testimony essential to the verdict in favor of the. People leads to the inevitable conclusion that defendant was not merely accommodating the buyer, but was *acting, if not as a principal seller, then at the very least as a middleman or a broker for his supplier."* (Emphasis supplied.) The fact pattern in *Argibay* is as follows: the undercover police officers in an endeavor to purchase narcotics, to wit, one ounce of cocaine, met with one Di Guiseppe, who took them to the home of the "connection," defendant Argibay's apartment. Argibay was a complete stranger to the police. Argibay's supplier delivered the cocaine to the apartment and the undercover officer paid Argibay $1,700 for same. The officer gave Di Guiseppe a grain "off the top" and saw money change hands from Argibay to Di Guiseppe. In the instant appeal the undercover police officer, Officer Machado, in an endeavor to purchase narcotics, to wit, a "quarter" of heroin, met with one James Soto who took him to the intersection of 139th Street and Cypress Avenue in The Bronx. Soto drew defendant's attention by yelling "Hey, Pop." After a conversation between Soto and defendant Darrisaw, Machado was introduced to defendant. Defendant was a complete stranger to the officer. The three entered the officer's unmarked vehicle and traveled to 140th Street and St. Ann's Avenue. Soto asked the undercover officer for the purchase money and Machado gave him $110 which Soto in turn handed over to defendant. At defendant's direction, Machado parked the car and all three exited and walked over to two individuals, Pasquale and Caballero. Defendant handed some money to Pasquale and received, in consequence, two plastic bags containing heroin from Caballero as instructed by Pasquale. It should be noted that when defendant, Officer Machado and Soto turned to walk over to Caballero to pick up the narcotics after defendant handed the money to Pasquale, the latter specifically indicated that the narcotics were to be handed over to defendant only. Defendant then handed the two bags to Machado. While the trio were returning in the car to the place where defendant was picked up, Officer Machado doing the driving, defendant, unsolicited, opened one of the plastic bags, scooped some heroin into a dollar bill which he kept for himself, then scooped some more heroin out and gave it to Soto. Upon exiting the vehicle, defendant told the officer to come back and see him. The officer drove Soto to the place where he initially met him. Comparison of the fact pattern in the instant appeal with that of *Argibay* discloses only two dissimilarities, both of which do not warrant a different result, but, instead, reinforce the conclusion that an affirmance is mandated herein. They are:

(a) in *Argibay* the supplier came to the seller, whereas in our case the seller went to the supplier for the narcotics, and (b) in *Argibay* the undercover officer gave his contact, Di Guiseppe, some of the narcotic, whereas in our case the seller gave the contact some of the narcotic. Indeed, this latter circumstance is not without significant pragmatic relevance, attuned as we must be to a common sense appreciation of human nature. This action on defendant's part only serves to further clearly delineate defendant's role in this narcotic transaction. To paraphrase the holding in *People v Argibay* (45 NY2d 45, *supra)* in terms of this matter, we need only interpolate defendant's name in place of Argibay: "It is argued, with superficial plausibility [Darrisaw] was not the ultimate supplier, he might have been acting as an agent of the buyers, the undercover officers * * * The mere fact that [Darrisaw] was a middleman or a broker, however, is not enough to warrant a charge on agency. Were there such a rule, even the largest of drug sellers would be entitled to an agency charge, since so many narcotics originate, ultimately, abroad. All agents are, concededly, middlemen of sorts. But the converse is not true. A middleman who acts as a broker between a seller and buyer, aiming to satisfy both, but largely for his own benefit, cannot properly be termed as agent of either. Such a middleman is a trader in narcotics, a merchant. He may not be concerned with the particular needs of an individual drug purchaser except to the extent that satisfying those needs affects his illicit business. To call him an agent strains beyond recognition the agency concept * * * To be an agent of his buyer, a narcotics merchant must be a *mere extension* of the buyer. He may act to procure what the buyer wants because the buyer has asked him to do so, but *not one of any independent desire or inclination to promote the transaction" (People v Argibay, supra,* pp 53-54; emphasis supplied). Granted the defense of agency is not susceptible of meticulous definition (see *People v Lam Lek Chong,* 45 NY2d 64; *People v Roche,* 45 NY2d 78, 87), abandonment of our common sense experience of life and of human nature in determining when an agency charge is warranted may well, if it has not already, propel the courts into a slowly expanding quagmire as they grapple with the parameters of this concept.* From a technical point of view, the working out of this concept on a dynamic case by case basis may well eventuate in its unworkability because of egregious inconsistent determinaţions. This is a danger alluded to by Judge Gabrielli in his partial dissent in *People v Roche (supra,* pp 87, 92-93). Nevertheless, in light of *People v Roche (supra),* the agency defense, with its problems and its dangers, is now a judicially recognized element of the process of dispensing criminal justice in the area of illicit drug transactions. Clearly, the employment of common sense well serves to minimize the dangers implicit in such concept. To that end and in that spirit I conclude that, on this record, there is no justification for an expansion of the agency principle to encompass the conduct of the defendant herein. *Argibay* controls, and if in a desire to avoid the *Argibay* holding we resort to a principle that some incriminating testimony by the defendant that one of his purposes in assisting in the role was the hope of future advantage or profit, then we are in effect requiring an agency charge in all instances where it may be claimed, regardless of the merit of that claim. I am not prepared to go this far, and envision dire consequences to

---

* The discussion of the underpinnings of the concept of agency set forth in *People v Roche* (45 NY2d 78) and the contrasting views of the majority and dissent thereon is most illuminating.

the social body if this does become "the law." Accordingly, the judgment convicting defendant of criminal sale of a controlled substance in the second degree should be affirmed.

