*993 OPINION OF THE COURT
Bernard Tomson, J.
This motion by plaintiffs is for summary judgment.
The plaintiffs are nonjudicial officers and employees of the court system in Nassau County. Prior to April 1, 1977, the plaintiffs were county employees and were represented by the Nassau County Chapter of the Civil Service Employees Association (CSEA). The 1977 collective bargaining agreement, which was negotiated between the County of Nassau and CSEA, took effect January 1, 1977 and is applicable to the plaintiffs. Schedule F of the agreement incorporates Ordinance No. 14-D-1977, which sets forth the time and leave rules for county personnel.
Subdivision (5) of section 2 of Ordinance No. 14-D-1977 defines "termination of service” as follows: " 'Termination of service’ means separation from the service of the County.” Subdivision (5) of section 3 of Ordinance No. 14-D-1977 is also pertinent and provides, in part, as follows: "Unless discharged for cause, upon termination of service, an officer or employee shall be entitled to cash payment for accumulated vacation time and converted sick leave up to a maximum for both of 85 days. Accumulated sick leave shall be converted for this purpose at the rate of 50% of actual time accumulated up to the maximum provided for in Section 4, subdivision 2”.
On April 1, 1977, the plaintiffs became State employees pursuant to the provisions of section 220 of the Judiciary Law. (See L 1976, ch 966, as amd by L 1977, ch 32.)
Section 220 (subd 6, par [d]), which took effect April 1, 1977, (three months after the effective date of the collective bargaining agreement), is of particular interest and reads as follows: "(d) Notwithstanding any other provision of law: (i) Any nonjudicial officer or employee of the courts and court-related agencies of the unified court system who becomes an employee of the state of New York pursuant to this subdivision may, at the option of such officer or employee, be credited with sick leave earned and accumulated but unused at the time he becomes a state employee, but not in excess of two hundred days and shall be credited with vacation leave earned and accumulated but unused at the time he becomes a state employee, but not in excess of forty days * * * (iii) At the time of retirement or any other permanent separation without fault from the employment of the state, any such nonjudicial *994 officer or employee shall be entitled to receive from the political subdivision payments for terminal leave based upon any time and leave credits accrued before April ñrst, nineteen hundred seventy-seven and not transferred to the state pursuant to subparagraph (i)” (emphasis supplied).
Each plaintiff filed a claim form with the County Comptroller and demanded a cash payment for accumulated vacation time and converted sick leave pursuant to the terms of the collective bargaining agreement. These claims were rejected by the County Comptroller.
This action was then instituted.
Plaintiffs Stone, Wilkins and Gilbride, seek to recover termination pay allegedly due and owing under the agreement. Plaintiff Bennett seeks a declaratory judgment on behalf of himself and 75 members of a class composed of nonjudicial employees whose claims for termination pay were also filed and rejected.
The issues to be determined are as follows:
1. Does the 1977 collective bargaining agreement provide for an immediate cash payment for accumulated vacation time and converted sick leave at the termination of an individual's county service?
2. Do the provisions of section 220 (subd 6, par [d]) of the Judiciary Law validly modify the collective bargaining agreement with respect to termination pay?
CASH PAYMENT
Schedule F of the agreement provides that upon termination of service without cause "an officer or employee shall be entitled to a cash payment for accumulated vacation time and converted sick leave.” Similar provisions in a prior collective bargaining agreement were construed by the County Attorney to authorize termination pay for a District Court reporter who terminated his county position to accept the same position in the Supreme Court. (See County Attorney Opn, June 6, 1973.)[1]
*995 The contractual provisions for termination pay require an immediate cash payment when an individual’s employment with the county is terminated for other than cause. Neither the 1977 collective bargaining agreement nor Ordinance No. 14-D-1977 was amended to provide for deferred termination payments in light of the enactment of chapter 966 of the Laws of 1976 and the takeover of the court system by the State on April 1, 1977.
Schedule F also defines "termination of service” as "separa *996 tion from the service of the County.” The term "termination of service” was first defined in Ordinance No. 34-1969. Ordinance No. 14-D-1977 recodified the time and leave rules for county personnel and repealed Ordinance No. 34-1969, but did not change the definition for "termination of service”.
The language of the agreement is clear and unambiguous. Such language precludes any conclusion that the plaintiffs’ county service was not terminated at the close of business on March 31, 1977. Accordingly, the right of the plaintiffs to an immediate cash payment vested at that time. (See Christian v County of Ontario, 92 Misc 2d 51.)
SECTION 220 OF THE JUDICIARY LAW
Section 220 (subd 6, par [d]) of the Judiciary Law conflicts with the 1977 collective bargaining agreement. The statute compels a transfer of 40 days of accumulated vacation and defers cash payment of terminal leave not transferred to the State until the termination of an individual’s employment with the State. The agreement, on the other hand, creates a right to an immediate cash payment. Section 220 (subd 6, par [d]) attempts to modify retroactively an existing contractual obligation.[2]
Recently, the United States Supreme Court in United States Trust Co. v New Jersey (431 US 1, 25-26) stated: "The Contract Clause is not an absolute bar to subsequent modification of a State’s own financial obligations. As with laws impairing the obligations of private contracts, an impairment may be constitutional if it is reasonable and necessary to serve an important public purpose. In applying this standard, however, complete deference to a legislative assessment of reasonableness and necessity is not appropriate because the State’s self interest is at stake.” (See, also, Home Bldg. & Loan Assn. v Blaisdell, 290 US 398.)
The establishment of a unified court system throughout the State is an important public purpose. However, the legislative infringement on contractual rights and obligations is not reasonable under the circumstances here presented. The County of Nassau is not on the brink of bankruptcy nor is it alleged that the county is faced with any dire financial problems because of the State’s takeover of the court system. The *997 county was free to negotiate with CSEA concerning termination pay but chose not to do so. The county may not now abrogate its agreement (see Matter of Board of Educ. v Levittown United Teachers, 53 AD2d 902).
The language of Judge Jasen in his dissenting opinion in Patrolmen’s Benevolent Assn. of City of N. Y. v City of New York (41 NY2d 205, 210-211) is apropos: "The intimate relation between government and its employees permits flexibility of a kind that is absent from agreements between private parties * * * Flexibility does not, of course, mean that public employers can abrogate contracts with employees at will. Municipal employees are public servants; but they are not public serfs. The State and its subdivisions are not feudal landlords who may move employees around or adjust their compensation by whim or caprice.” In the Patrolmen’s Benevolent Assn, case, Judge Jasen also noted that the existing rights of public employees were not affected since the wage freeze legislation in question applied to future increases. By contrast, in the instant case there is a contractual right to an immediate cash payment.
The retroactive application of a statute on a contractual obligation was discussed in Periconi v State of New York (91 Misc 2d 823, 827) where it was said: "the retroactivity of a statute cannot have the effect of violating constitutional prohibitions and, therefore, if contractual obligations or vested rights are impaired or destroyed by the ex post facto application of a law, such application will be constitutionally infirm. The right to enforce a legal cause of action is a vested right within said constitutional proscription and, consequently, once such right has accrued, its extirpation by retroactive legislation is constitutionally constrained. (See 16A CJS, Constitutional Law, § 417, pp 102-103.)”
In view of the foregoing, the provisions of section 220 (subd 6, par [d]) of the Judiciary Law are unconstitutional and invalid to the extent they conflict with the above-cited provisions of the collective bargaining agreement.
Plaintiffs’ motion for summary judgment is granted. The only issue to be determined is the amount of damage sustained by plaintiffs Stone, Wilkins and Gilbride.
Plaintiffs shall serve and file a note of issue and statement of readiness and place this matter on the calendar of Trial Term Part I for the March Term.

. The County Attorney opinion of June 6, 1973 is addressed to the Honorable Thomas A. Farley, the former Administrative Judge of the Supreme Court in Nassau County, and provides, in part, as follows:
"Question
"Should a District Court reporter who has been appointed to the same position in the Supreme Court receive the benefits provided under the 'termination of service’ clauses used in the contract between Nassau County and CSEA?
*995 "Law
"The termination of service provisions as set forth in Section 3, subdivision 6 and 7 of Schedule *F’ of the CSEA Agreement reads, in part, as follows:
" '6. Unless discharged for cause, and . . . employee . . . shall receive, upon the termination of service ... a cash payment for the monetary value of his accumulated vacation time, not to exceed fifty (50) days, including the prorated vacation time he would have received if he had been in service on his next anniversary day under subdivision 2a of this section.
"7. An . . . employee, upon termination of service, shall receive additional vacation time in the amount of twenty-five (25) per cent of his sick leave accumulated but unused at the time of such termination.
" 'Termination of service’ means separation from the service of the County unless discharged for cause. (See Section 2, subdivision 6 of Schedule F).
"Section 11 of Schedule F sets forth the exclusion of certain employees. Insofar as pertinent, said section reads as follows:
" '11. Excluded Officers and Employees
"Subject to the exclusions hereafter provided, the provisions of this ordinance shall apply to all officers and employees of the County of Nassau and those paid from County funds. Except for subdivisions 6 and 7 of section 3, with subdivision 7 being inapplicable to members of the police force or faculty at Nassau Community College, this ordinance shall not be applicable to the following: * * *
"3) officers and employees of the:
"(a) departments under the jurisdiction of judicial conference . . .’
"The salary of District Court Reporter I is paid from County funds. As such this position falls within the coverage of Schedule 'F’. The individual is not disqualified by the fact that he falls under the exclusion of paragraph 3(a) because subdivisions 6 and
7 are made applicable to him by the language of the agreement.
"Although the new position as Court Reporter in the Supreme Court is paid with State funds and under the jurisdiction of the Judicial Conference, the employee should not be penalized by this fact since he has already qualified for a cash payment for accumulated vacation time and twenty-five percent of his accumulated sick time. It should be noted in this respect that you state in your memorandum that it is not the policy of the State to allow an appointee to enter the Supreme Court with accrued vacation time although accrued sick leave may be credited. This employee has elected to receive twenty-five percent of his accrued leave in lieu of credit for twenty-one days and should receive no credit for accrued sick leave by the State.
"Conclusion
"Unless discharged for cause, a District Court Reporter who terminates his position to accept a similar position in the Supreme Court is entitled to the benefits provided in the termination of service clauses pursuant to the ordinances and CSEA agreement approved by the Board of Supervisors.”

. On September 20, 1977, plaintiffs’ motion for summary judgment was adjourned by order of Mr. Justice Oppido to give the Attorney-General the opportunity to appear to defend the constitutionality of section 220 (subd 6, par [d]) of the Judiciary Law. The Attorney-General has declined to appear in this action at the present time.