Scileppi, J.
In 1956 claimant, Louis Friedman, was elected to the office of Supreme Court Justice for a term expiring on December 31, 1970. On July 2, 1962 the Presiding Justice of the Appellate Division, Second Department, pursuant to the State Constitution (art. VI, § 9-a [now § 22]), requested the then Chief Judge of the Court of Appeals to convene the Court on the Judiciary to consider matters involving the conduct of the claimant disclosed in a report of a Justice of the Supreme Court filed in the Appellate Division, Second Department, in a disciplinary proceeding entitled Matter of M. Malcolm Friedman (see 17 A D 2d 644) brought against claimant’s brother.
On August 15, 1962 the Court on the Judiciary[1] determined *532 preliminarily that sufficient cause existed for preferring charges and accordingly, based on the conduct disclosed in the above-mentioned report, the following charges were served on August 16, 1962: £ £ That Louis L. Friedman has abused his public office as a Justice of the Supreme Court of the State of New York, Second Judicial District (1) by interfering with and obstructing a Judicial Inquiry and Investigation ordered by the Appellate Division of the Supreme Court of the State of New York, Second Judicial Department, on the 21st day of January 1957; (2) by engaging in unethical and improper conduct in that, while a Justice of the Supreme Court, he maintained in his judicial chambers exclusive custody, control and management of the moneys, accounts, books and financial records of the firms of Friedman and Friedman and M. Malcolm Friedman without properly preserving or accounting therefor and, moreover, would not surrender the same to M. Malcolm Friedman despite reasonable and proper demands therefor; (3) by violating and failing to observe the concept, spirit and letter of the canons of judicial ethics, and by causing M. Malcolm Friedman to violate and to fail to observe the canons of professional ethics.”
Trial was scheduled for October 19, 1962 but was adjourned, without date, to give counsel an opportunity to agree on a stipulated record. Claimant’s counsel objected to incorporating into the record evidence about two matters relating to claimant’s alleged practice of law in violation of the State Constitution and claimant’s alleged violation of the State and Federal Income Tax Laws. Objection was made on the ground that the evidence related to matters which had never been charged, and as to which neither claimant nor various State officers had ever been given any notice. On December 10, 1962 the Court on the Judiciary considered the objection, overruled it and declared that the evidence would be received.
The trial was held in January and February, 1963. On February 26,1963 the court handed down its decision dated February 22, 1963 holding that the charges had been sustained and, therefore, claimant should be removed from his offiqe as Justice of the Supreme Court.
Claimant subsequently presented to the court his petition and a proposed order to show cause to vacate the decision of the court on the grounds (1) that two of the members of the court *533 were not present when the court was convened on August 15, 1962 and that, therefore, the Court on the Judiciary was never properly composed; (2) that proper notice of all the charges within 60 days before the trial was not given to the Governor of the State of New York, the President of the Senate, the Temporary President of the Senate, and the Speaker of the Assembly; and (3) that the proceedings contravened the due process provision of the Fourteenth Amendment to the United States Constitution.
In essence, claimant contended that the court had been without jurisdiction to proceed with the matter. Treating the proposed show cause order as a motion to vacate its determination, the court denied the motion, holding that it had been properly convened and had complied with the procedural requirements of the State Constitution.
Thereafter claimant made several abortive attempts to obtain an adjudication that his removal by the Court on the Judiciary was void. He filed a notice of appeal to the Appellate Division, Third Department, from the decision of the Court on the Judiciary. In addition, he sought review there by way of article 78. Both the appeal and the article 78 proceeding were dismissed on the ground that the Appellate Division lacked jurisdiction to directly or collaterally review the jurisdiction of the Court on the Judiciary (Matter of Friedman, 19 A D 2d 120).
Claimant also appealed to the United States Supreme Court from the determination of the Court on the Judiciary claiming Federal constitutional violations. The Supreme Court dismissed (one Justice dissenting) holding that no substantial Federal question was presented (375 U. S. 10).
An article 78 proceeding instituted against the New York City Comptroller in the Supreme Court, New York County, to compel payment of the city’s share of the salary that claimant alleges is owed to him was also dismissed on the ground that ‘1 the relief sought in the petition is not available in a proceeding under article 78 of the Civil Practice Act ” (Matter of Friedman v. Beame, N. Y. L. J., Nov. 4, 1963, p. 14, col. 7). On appeal the Appellate Division, First Department, affirmed (20 A D 2d 969).
The instant action was brought in the Court of Claims to recover that portion of claimant’s salary payable by the State from the date of his removal to the date of the filing of the claim, *534 February 18, 1965, alleging that claimant was never legally removed from his elected office and was, therefore, entitled to the salary accrued and would continue to be entitled to salary until the expiration of his term of office on December 31, 1970. The State moved to dismiss his claim on the grounds that the Court of Claims lacked jurisdiction of the subject matter of the claim and that the claim failed to state a cause of action. The Court of Claims, in granting the motion to dismiss, did so on the ground that the claim was barred by res judicata since the Court on the Judiciary had ruled adversely to the claimant on the issue of its own jurisdiction to remove him and that determination could not be collaterally attacked. The Appellate Division, Third Department, reversed in an opinion by Staley, J., and held that, since claimant’s collateral attack was directed, not at factual issues previously litigated, but at the legal conclusion of the Court on the Judiciary as to its own jurisdiction to remove claimant, the determination of the jurisdictional issue by the Court on the Judiciary was not res judicata and did not preclude the claimant from attacking the validity of that determination in his present action. Justice G-mson dissented in a memorandum and voted to affirm on the ground that it “ is unthinkable * * * that the claimant should be entitled to recover salary allocable to the office from which he was thus removed, and to which he cannot be restored, for services that he did not perform and could not have lawfully performed ”. The Appellate Division granted leave to appeal to this court and certified three questions: (1) Was the Appellate Division correct in reversing the order and judgment of the Court of Claims for the reason that the judgment of the Court on the Judiciary was not res judicata as to the present claim? (2) Does the Court of Claims have jurisdiction of the subject matter of the claim? (3) Does the claim state a cause of action? For the reasons which follow, it is concluded that questions one and two should be answered in the affirmative and question three in the negative.
In this case, we are concerned with the “ estoppel ” aspect of the doctrine of res judicata by which “ Any right, fact, or matter in issue, and directly adjudicated on, or necessarily involved in, the determination of an action before a competent court in which a judgment or decree is rendered on the merits *535 is conclusively settled by the judgment therein and cannot again be litigated between the parties and privies whether or not the claim or demand, purpose, or subject matter of the two suits is the same ” (50 C. J. S., Judgments, § 592, p. 11). Simply put, under the doctrine of res judicata a matter once judicially decided is finally decided; therefore, a litigant will not be heard to attack collaterally a matter which was or could have been determined in the prior litigation. Orderly procedure and repose in litigation demand that available methods of direct review be used as a vehicle for the correction of alleged errors.
In holding that claimant was prevented by the doctrine of res judicata from collaterally attacking his removal, the Court of Claims in pertinent part said:
“ Issues of jurisdiction may be, as any other matter, the subject of res judicata. (United States v. Eastport S. S. Corp., 255 F. 2d 795 [2d Cir., 1958].) A court has the authority to pass upon its own jurisdiction, and its determination sustaining jurisdiction against attack, while open to direct review, is res judicata in a collateral action. (Chicot County Bist. v. Bank, 308 U. S. 371 [1940].) Claimant here raised the question of jurisdiction in the proceedings before the Court on the Judiciary, and the issue was determined adversely to him. * * *
“ The doctrine of res judicata is not restricted to factual determinations. It is equally applicable to questions of jurisdiction over the subject matter and to issues of law. (Stoll v. Gottlieb, 305 IT. S. 165 [1938].) * * *
‘ ‘ If the Court on the Judiciary exceeded the jurisdiction conferred upon it under article VI of the New York State Constitution, claimant’s remedy was by direct review.” (Friedman v. State of New Y.ork, 53 Mise 2d 455, 457—458.)
In our opinion this determination was erroneous.
Inherent in the lower court’s reasoning is the assumption that claimant could have directly attacked his removal by way of appeal. There is, however, no basis or authority for this view. There is no inherent right to appeal a court’s determination. The right to appeal depends upon express constitutional or statutory authorization. Section 9-a (now § 22) of article VT of the State Constitution, under which claimant was removed, establishes the Court on the Judiciary and sets forth its powers and certain procedures to be followed in removal proceedings, *536 but nowhere in that section is a right of appeal provided for and no general constitutional or statutory provision exists for an appeal from the Court on the Judiciary. Nor can it be said that the right to appeal is inherent in the concept of due process. Thus, while the Court of Claims was of the opinion that claimant should have appealed from the determination of the Court on the Judiciary, it failed to take cognizance of the fact that as a matter of law claimant could not take an appeal.
Nor do we think that the Court of Claims was correct in stating broadly that a court’s determination sustaining jurisdiction against attack is res judicata in a collateral action. This is true only in a case where jurisdiction depends on a fact that is litigated in a suit and is adjudged in favor of the party who avers jurisdiction. Where, however, as in this case, a court’s determination as to subject-matter jurisdiction is a mere • legal conclusion, the want of jurisdiction to render the particular judgment may always be asserted and raised directly or collaterally.
As this court long ago said in O’Donoghue v. Boies (159 N. Y. 87,100): ‘ ‘ It is obvious that, under any other rule, a court could acquire jurisdiction of the person or the subject-matter by the mere assertion of it, or by an erroneous decision upon the law that it has it in any particular case ” (see, also, Eestatement, Judgments, §§ 8,11).
The rule applicable here was perhaps best stated by this court in Matter of Baltimore Mail S. S. Co. v. Fawcett (269 N. Y. 379, 388): “A court without jurisdiction of the subject-matter of an action can acquire no jurisdiction by erroneous decision that it has jurisdiction * * * A judgment thereafter rendered by default is void * * * and a defendant may raise and reiterate the objection of want of jurisdiction at any stage.”
It is, therefore, clear that claimant is not prevented by the doctrine of res judicata from asserting the instant claim. Under the applicable statutes, the State is liable for the payment of a portion of the salary of the office from which claimant contends he was illegally removed. It necessarily follows that the Court of Claims had jurisdiction of the subject matter of the action, since that court, in fact, is the only forum in which the State has consented to be sued. Accordingly, the first two questions *537 certified by the Appellate Division should be answered in the affirmative.
The third question — Does the complaint state a cause of action? — necessarily raises the question of the legality of claimant’s removal for, if the removal was valid, the claim must be dismissed.[2] 3
Claimant’s attack on the removal is threefold. Initially he contends that the removal was a nullity because the failure to follow prescribed constitutional procedures with respect to the organization of the Court on the Judiciary and with respect to giving claimant and specified State officers timely notice of the charges deprived the court of subject-matter jurisdiction. Suffice it to say that we have carefully considered each of the alleged irregularities and find no merit to claimant’s contention. The procedural defects, if any, relied upon by claimant do not reach jurisdictional dimensions and in no way deprived him of a fair trial.
Belying on the sweeping language contained in Matter of Murchison (349 U. S. 133), claimant next contends that he was denied due process of law under the Fourteenth Amendment to the United States Constitution because the Court on the Judiciary acted as complainant, prosecutor and Judge. Additionally, he contends that the removal section of the State Constitution (art. VI, § 22, formerly § 9-a) which authorizes a removal “ for cause ’ ’, without providing any standards to define the meaning of the term, is vague and indefinite and, therefore, violates the United States Constitution.
These contentions cannot serve as a basis for claimant’s action, and in our opinion are without merit.
As noted earlier, the doctrine of res judicata does not estop claimant from collaterally attacking the subject-matter jurisdiction of the Court on the Judiciary because there was no avail *538 able means of appeal to review that question and because the court’s determination as to its jurisdiction was a mere legal conclusion, not based upon any litigated fact. That holding, however, is limited solely to claimant’s contentions that the Court on the Judiciary did not comply with the mandates of the State Constitution. The contentions presently under discussion, however, are concerned only with Federal constitutional violations. With respect to these contentions, claimant had available — and took — a direct appeal from the determination of the Court on the Judiciary to the United States Supreme Court. That appeal was dismissed for 11 want of a substantial federal question ” (375 U. S. 10).
Claimant contends that since the appeal was met with a motion to dismiss or affirm, and since the Supreme Court did not affirm, but dismissed the appeal, this was not a decision on the merits, but only a refusal to take appellate jurisdiction, and is not a bar to the present action.
The efficacy of this argument would be apparent if the instant case involved a denial of certiorari rather than a dismissal of an appeal. The Supreme Court has frequently said that “ The denial of a writ of certiorari imports no expression of opinion upon the merits of the case, as the bar has been told many times ’ ’ (United States v. Carver, 260 U. S. 482, 490; see, also, Stern and Gressman, Supreme Court Practice [3d ed.], § 5-7, p. 179). This is not true, however, where the Supreme Court dismisses an appeal from a State court “ for want of a substantial federal question ”. As Messrs. Stern and Gressman state in their treatise on Supreme Court Practice (§ 5-18, pp. 195-196):
“ When the Court feels that the decision below is correct and that no substantial question on the merits has been raised, it will affirm am, appeal from a federal court, but will dismiss an appeal from a state court ‘ for want of a substantial federal question. ’ Only history would seem to justify this distinction; it would appear more sensible to affirm appeals from both state and federal courts when the reason for the summary disposition is that the decision below is correct. But if the bar fully understands that 1 dismissed for want of a substantial federal question ’ in a state court appeal is the equivalent of affirmance on the merits insofar as the federal questions under 28 U. S. C., § 1257 (1) and (2) are concerned, and is not limited to a deter *539 mination of whether there is such a federal question, the difference in nomenclature does no harm.
“ The historical difference in the wording of the Court’s orders in state and federal court appeals reflects a distinction made in the Rules as to the kind of motion an appellee should file. As stated in Rule 16 (1) (b), the Court will receive from an appellee 1 a motion to dismiss an appeal from a state court on the ground that it does not present a substantial federal question. ’ And Rule 16 (1) (c) makes appropriate the filing of ‘ a motion to affirm the judgment sought to be reviewed on appeal from a federal court on the ground that it is manifest that the questions on which the decision of the cause depends are so unsubstantial as not to need further argument ’ ” (emphasis added).
It thus appears that having had a final determination on the merits of the issues raised in this action, claimant is estopped from again litigating them.
Assuming, however, that the Supreme Court’s dismissal is not res judicata as to these issues, we are of the opinion that claimant’s arguments are without merit. In Matter of Sarisohn (21 N Y 2d 36, 48) the identical issues were raised and we unanimously held that: ‘ ‘ These are contentions that go to the traditional nature of removal proceedings and at this late date do not merit discussion. ’ ’
The fact that the term ‘ ‘ for cause ’ ’ is not defined by the constitutional provision authorizing the removal of a Judge does not render it void for vagueness. As Judge Bartels said in Sarisohn v. Appellate Div., Second Dept., S. Gt. of St. of N. Y. (265 F. Supp. 455, 458): “ The words ‘ for cause ’ mean for a cause to be enumerated and specified in each particular instance so that the defendant may be duly notified and adequately prepared to defend the charges. It does not mean that a judge may be removed for ‘ cause ’ without more and without an enumeration of the charges constituting the alleged ‘ cause ’. It would be impossible to enumerate in any statute all the possible grounds and circumstances justifying the removal of a judicial officer. Guidelines may be found in the Canons of Ethics, applicable to both attorneys and judges, adopted by the American Bar Association and other bar associations, and also in the general moral and ethical standards expected of judicial officers by the com *540 munity. ‘ For cause ’ has been defined in several cases involving the removal of judicial officers and they provide a reasonable person with a competent definition of this phrase.”
Thus in Matter of Kane v. Rudich (256 App. Div. 586-587) it was noted that the term ‘1 cause ’ ’ has been defined ‘ ‘ as including corruption, general neglect of duty, delinquency affecting general character and fitness for office, acts violative of law inspired by interest, oppressive and arbitrary conduct, reckless disregard of litigants ’ rights, and acts justifying ‘ the finding that his future retention of office is inconsistent with the fair and proper administration of justice. ’ (Matter of Droege, 129 App. Div. 866, 882; 197 1ST. Y. 44, 52; Matter of Broohlyn Bar Association [Hirshfield], 229 App. Div. 654; Matter of Barlow, 141 id. 640.) ”
It must be remembered that the power of removal is designed to insure efficiency and fidelity in the discharge of official duty. The office of a Judge is so delicate that it is difficult, if not impossible, to enumerate and define, with legal precision, the conduct for which a Judge ought to be removed (cf. Ex Parte Secombe, 19 How. [60 H. S.] 9, 14 [dealing with disbarment of an attorney]).
Thus it is widely recognized that “ the degree of incompetency or malconduct which amounts to sufficient cause for removal must of necessity, within certain established limits, rest somewhat in the sound discretion in the officer [or body] in whom the power of removal is vested ’ ’ (Matter of Sausbier v. Wheeler, 252 App. Div. 267, 270 ; Farish v. Young, 18 Ariz. 298 ; 4 McQuillin, Municipal Corporations, § 12.234, and cases cited therein). Although the body which exercises the power of removal is vested with broad discretion where the term ‘1 cause ’ ’ is not defined, it is manifest that the power cannot be exercised arbitrarily. The phrase 1 ‘ for cause ’ ’ clearly means ‘1 legal cause ’ ’ —■ some cause affecting or concerning the ability or fitness of the incumbent to perform the duty imposed upon him (People ex rel. Munday v. Fire Gomrs., 72 N. Y. 445, 449).
Cause and similarly broad standards have been upheld against the charge of vagueness or used in numerous statutes, to justify removal from office or denial of license privileges.
Thus in Lehmann v. Board of Accountancy (263 U. S. 394) a State Board of Public Accountancy was authorized by statute *541 to cancel the certificates of pnhlic accountants ‘ ‘ for any unprofessional conduct of the holder of such certificate, or for other sufficient cause ’’ upon written notice of 20 days and a hearing thereon. Appellant was brought up on charges and sought to enjoin the board from acting, urging, inter alia, that the statute is in conflict with the Constitution of the United States because it purports to authorize the revocation of a certificate without defining or determining in advance what grounds or facts or acts shall be sufficient cause for such revocation. In rejecting this contention, the Supreme Court said (p. 398): “ Such absence permits, it is asserted, arbitrary action. We cannot yield to that assertion or assume that the Board will be impelled to action by other than a sense of duty or render judgment except upon convincing evidence introduced in a regular way with opportunity of rebuttal. We certainly cannot restrain the Board upon the possibility of contrary action. Official bodies would be of no use as instruments of government if they could be prevented from action by the supposition of wrongful action.”
In Board of Educ. of City of Los Angeles v. Swan (41 Cal. 2d 546) the Supreme Court of California held that a statute authorizing the removal of a teacher for unprofessional conduct was not void for vagueness because it would be impossible to enumerate in any legislative enactment those things for which a teacher might prove unworthy of the calling.
The “ for cause ” standard contained in section 22 (formerly § 9-a) of article VI is no more vague than standards of “ misconduct ”, “ maladministration ”, “ malfeasance ’ ’ and ‘ ‘ malversation ” in office or willful and corrupt conduct in office which are traditionally found in statutes authorizing the removal of public officers (see, e.g., Public Officers Law, §§ 32, 36). Nor is the standard any more vague than the standard of “good behavior ’’with respect to Federal Judges contained in section 1 of article III of the United States Constitution.
In sum we find claimant’s contention to be as wanting in substance as the United States Supreme Court did when it dismissed the claimant’s appeal from the determination of the Court on the Judiciary ‘ ‘ for want of a substantial federal question ”.
Claimant’s contention that the functions of complainant, prosecutor and Judge were combined in the Court on the Judiciary *542 in violation of Ms constitutional rigMs is also without merit. Primary reliance is placed on Matter of Murchison (349 U. S. 133, supra) a criminal contempt case that is clearly distinguishable from the removal proceeding in the Court on the Judiciary. The petitioners in the Murchison case were called before a, MicMgan State Judge, who served as a “ one-man grand jury ” under Michigan law in investigating crime. Convinced that petitioner Murchison had committed perjury and because petitioner White had refused to answer numerous questions on the ground that he was entitled to have counsel with him, the Judge charged each of them with criminal contempt. The Judge who had been the “grand jury ” then tried both petitioners in open court, convicted and sentenced them for criminal contempt. In holding that it was a violation of due process for the “ judge-grand jury ” to try these petitioners, the Supreme Court said (pp. 136, 137):
“ A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case and no man is permitted to try cases where he has an interest in the outcome. That interest cannot be defined with precision. Circumstances and relationships must be considered. This Court has said, however, that ‘ every procedure which would offer a possible temptation to the average man as a judge * * * not to hold the balance nice, clear and true between the State and the accused, denies the latter due process of law. ’ Tumey v. Ohio, 273 U. S. 510, 532 * * *
‘1 It would be very strange if our system of law permitted a judge to act as a grand jury and then try the very persons accused as a result of his investigations * * * Having been a part of that process a judge cannot be, in the very nature of things, wholly disinterested in the conviction or acquittal of those accused. While he would not likely have all the zeal of a prosecutor, it can certainly not be said that he would have none of that zeal. Fair trials are too important a part of our free society to let prosecuting judges be trial judges of the charges they prefer. ’ ’
*543 This language, although broad and seemingly all encompassing, must nevertheless be viewed in the context of the entire case. Thus the Supreme Court pointed out the Judge’s recollection of what occurred during his “ grand jury ” secret session is likely to weigh more heavily with him than any testimony given in the open contempt trial. Indeed, the court observed that this “ judge whom due process requires to be impartial in weighing the evidence presented before him, called on his own personal knowledge and impression of what had occurred in the grand jury room and his judgment was based in part on this impression, the accuracy of tvhich could not be tested by adequate cross-examination.” (349 U. S., supra, at p. 138; emphasis added.)
Since the “ one-man grand jury ” proceeding had taken place in the secret chambers of the Judge, there were no public witnesses whom petitioners could call upon to give disinterested testimony concerning what had occurred. Finally the court noted that, if the Judge became a material witness in the contempt trial over which he was presiding, “ the result would be either that the defendant must be deprived of examining or cross-examining him or else there would be the spectacle of the trial judge presenting testimony upon which he must finally pass in determining the guilt or innocence of the defendant. In either event the State would have the benefit of the judge’s personal knowledge while the accused would be denied an effective opportunity to cross-examine. The right of a defendant to examine and cross-examine witnesses is too essential to a fair trial to have that right jeopardized in such way ” (p. 139).
The proceedings in the Court on the Judiciary are a far cry from the Murchison case, where the Trial Judge not only pressed the charges, acted as a witness and could fairly be likened to a party, but the right of cross-examination — a fundamental right, the deprivation of which is error of the first magnitude (Smith v. Illinois, 390 U. S. 129,131) —was virtually nonexistent.
There is simply no basis for holding that the procedure followed by the Court on the Judiciary deprived claimant of a fair trial in a fair and impartial tribunal. Here the Court on the Judiciary was not the accuser, for it was the report of the Supreme Court Justice which served as the complaint. Nor can *544 it be said that the Court on the Judiciary had an interest in the outcome of the case because it reviewed the allegations in the complaint in order to ascertain, as any court would on a demurrer or motion, whether basis existed for preferral of charges. In other words, far from prejudging the facts, the Court on the Judiciary merely determined, as a matter of law, that the report contained facts sufficient to constitute ground for the preferral of charges. The final charges were preferred by counsel designated by the court, but it cannot be assumed that, because the court designated the attorneys to conduct the proceeding, the court became so intimately involved with the case as to deprive claimant of an impartial tribunal. If this were the law, the People would have cause to object in every criminal case in which a Trial Judge assigns counsel for an indigent defendant and presides at the trial.
The Court on the Judiciary is a court of record (Judiciary Law, '§ 2) whose jurisdiction is strictly limited to removing or retiring a Judge or Justice and disqualifying a Judge or Justice removed from again holding any public office in this State (N. Y. Const., art. VI, § 22). To this extent the Court on the Judiciary sits to supervise the conduct of the members of the Judiciary of this State, and like an administrative agency which may remove an employee for cause, where a combination of functions is traditional, so too that combination of functions may, consonant with due process, exist in the Court on the Judiciary.
Accordingly, for the reasons stated in this opinion, the order appealed from should be reversed and the order and judgment of the Court of Claims dismissing the complaint reinstated.

. The Presiding Justice of the Appellate Division, at whose request the Court on the Judiciary was convened, did not sit as a member of that court in connection with claimant’s removal proceeding.

. We note that the State’s reliance on Austin v. Board of Higher IS due. (5 N Y 2d 430), for the proposition that claimant cannot recover on his claim for salary unless he is first reinstated in the office for which he seeks salary, is misplaced. Austin is not applicable to the facts of this case. In Austin the removal
of the officeholder was accomplished by a legally organized body with jurisdiction to enter a removal order in a proper case. Here claimant argues that the court which removed him was never legally organized and, therefore, he was never legally removed and does not have to be reinstated.