**Circuit Judge Pierre E. DOSTERT, Harpers Ferry, West Virginia, Plaintiff,**

v.

**Honorable Richard M. NEELY et al., Defendants.**

**Civ. A. No. 80–2314.**

United States District Court,
S. D. West Virginia,
Charleston Division.

Sept. 10, 1980.

# 1146

Pierre E. Dostert, pro se.

Sterl F. Shinaberry, Charleston, W. Va., for defendant.

## MEMORANDUM ORDER

COPENHAVER, District Judge.

Plaintiff brings this action under 42 U.S.C. § 1983, seeking injunctive relief against defendants for allegedly depriving plaintiff of rights guaranteed by the United States Constitution. The court's jurisdiction is founded upon the provisions of 28 U.S.C. § 1343(3) and (4).

Plaintiff is a duly elected Circuit Judge of the State of West Virginia. Defendants are the five Justices of the Supreme Court of Appeals of West Virginia, the Clerk and the Administrative Director of the Supreme Court of Appeals of West Virginia, another Circuit Judge, the Magistrate of Cabell County, West Virginia, and two special prosecutors of Monongalia County, West Virginia. Plaintiff seeks orders enjoining the defendants from proceeding with a criminal prosecution pending against him and enjoining the imposition of a disciplinary suspension and assessment of costs against him.

Plaintiff filed his complaint on July 28, 1980. On July 29th, a hearing on plaintiff's motion for a temporary restraining order was held, at which the plaintiff appeared in person and Sterl F. Shinaberry appeared as counsel for defendants Justice Fred H. Caplan, Justice Thomas B. Miller, Justice Darrell V. McGraw, Jr., Clerk George W. Singleton, and Magistrate Alvie Qualls. On July 30th, the court found that both the balance of hardship test and the likelihood of success standard weighed in favor of the defendants, and concluded that plaintiff's motion for a temporary restraining order should be denied. *Blackwelder Furniture Co. v. Seilig Manufacturing Co.*, 550 F.2d 189 (4th Cir. 1977). Those findings and conclusions are contained in the court's order entered July 31st, denying the plaintiff's motion for temporary relief. On the same day, plaintiff filed a notice of appeal from the court's decree denying the motion for a temporary restraining order. At the same time defendants filed in this court a motion to dismiss the complaint. Plaintiff filed his reply to defendants' motion to dismiss on August 6th. Inasmuch as this court is not, under the circumstances present here, deprived of its jurisdiction during the pendency of plaintiff's appeal of the court's interlocutory order denying temporary restraining relief, the defendants' motion to dismiss will now be addressed. Rule 62(a) of the Federal Rules of Civil Procedure; 11 Wright and Miller, Federal Practice and Procedure, § 2962 (1973) (hereinafter Wright & Miller).

Defendants move to dismiss the complaint for lack of personal jurisdiction over several defendants, for lack of subject matter jurisdiction, for failure of the plaintiff to exhaust available appellate remedies, for failure to state a claim upon which relief can be granted, on grounds of judicial immunity, and on abstention grounds. Abstention may be raised in a motion to dismiss. *See Kugler v. Helfant*, 421 U.S. 117, 95 S.Ct. 1524, 44 L.Ed.2d 15 (1975). Because the resolution of the abstention question renders unnecessary at this stage the

consideration of other grounds for dismissal, the court turns directly to that issue and the doctrine of *Younger v. Harris*.

## I.

 The pertinent facts for present purposes are taken to be the factual allegations in plaintiff's complaint, as reiterated by plaintiff at the hearing for temporary relief. Mere allegations of legal conclusions are insufficient to state a claim under § 1983; when plaintiff's factual allegations do not support the legal conclusions, the conclusions will not be accepted. *Kadar Corp. v. Milbury*, 549 F.2d 230 (1st Cir. 1977); *Albany Welfare Rights Organization v. Shreck*, 463 F.2d 620 (2d Cir. 1972); 5 Wright & Miller § 1286. The allegations in the complaint are to be construed in the manner most favorable to plaintiff. 5 Wright & Miller §§ 1286, 1363.

On March 25, 1979, a helicopter landed illegally in Bolivar, West Virginia. The town police, unable to find the town judge, contacted plaintiff in order to obtain a warrant for the arrest of the helicopter pilot. Plaintiff elected to accompany the police to the home of Detlev Preissler, where the helicopter had landed. At the Preissler residence, plaintiff participated in the ensuing arrests of the helicopter pilot, Detlev Preissler and Detlev's son, Erik.

Plaintiff alleges that Chief Justice Caplan, after receiving unsolicited copies of the newspaper articles reporting plaintiff's participation in the arrests, referred the incident to the Judicial Inquiry Commission. The Commission is the first tier in West Virginia's three–tiered procedure for investigating charges of judicial misconduct. The Judicial Inquiry Commission is the creature of the West Virginia Supreme Court of Appeals which established the Commission pursuant to the court's authority under Article 8, Section 8 of the Constitution of West Virginia, as amended by the Judicial Reorganization Amendment (ratified in the general election of November 5, 1974). The Judicial Inquiry Commission conducted an investigation and hearing. On May 18, 1979, the Commission filed a complaint with the Judicial Review Board, the second tier in the procedure. The complaint charged plaintiff with participating in the Preisslers' arrest, carrying a pistol without a license, and removing the prosecuting attorney, Mr. Skinner, from the case against the Preisslers, all in violation of Canons 2 A and 3 A of the Judicial Code of Ethics.

In accordance with the West Virginia Rules of Procedure for the Handling of Complaints Against Justices, Judges and Magistrates (hereinafter Rules for Complaints Against Justices), the Judicial Review Board notified plaintiff of the complaint against him and conducted a hearing on November 2, 1979. The hearing consisted of opening statements, direct and cross–examination of several witnesses (including the plaintiff), presentation of exhibits, and closing arguments. Plaintiff admitted participating in the arrests and testified regarding the licensing of the pistol. The Preisslers were present, but did not testify. On December 20, 1979, the Judicial Review Board rendered its decision, a written recommendation to the West Virginia Supreme Court of Appeals, the third tier in the process. The decision found that Judge Dostert had violated Canons 2 A and 3 A of the Judicial Code of Ethics by participating in the Preisslers' arrests, carrying a pistol without a license issued pursuant to the provisions of West Virginia law, and unilaterally removing the prosecutor from the Preissler prosecutions. The Board recommended a disciplinary suspension of six months without pay.

The Judicial Review Board's decision was filed with the Supreme Court of Appeals, as provided for in the Rules for Complaints Against Justices. The Supreme Court of Appeals held a hearing on the matter on February 26, 1980. In an opinion dated June 19, 1980, the Supreme Court of Appeals found nothing improper in plaintiff's dismissal of the prosecutor, but held that plaintiff had violated Canon 2 A by participating in the arrests and carrying a pistol in violation of the law, and adopted the Judicial Review Board's recommended sanc-

tion of a six–month suspension without pay, effective June 30, 1980. *W. Va. Judicial Inquiry Commission v. Dostert,* —— W.Va. ——, 271 S.E.2d 427 (1980)[1]. Plaintiff requested and was granted a stay of the suspension until July 30 in order to consider further proceedings. This suit was filed on July 28, 1980, seeking, *inter alia,* to enjoin the imposition of the suspension without pay.

During the course of the disciplinary processes described above, several other proceedings took place arising out of the landing of the helicopter in the Preisslers' back yard. Plaintiff alleges that the Preisslers appeared before the Supreme Court of Appeals to seek the reinstatement of Prosecutor Skinner in the fall of 1979, and that the Supreme Court effectively reinstated him, although Prosecutor Skinner removed himself a week later.

On March 5, 1980, the Preisslers appeared again before the Supreme Court, seeking criminal warrants against the plaintiff and the police officers who participated in the arrest of the Preisslers. The Supreme Court appointed a special magistrate, David Pedneau, to hear the Preisslers' complaint and appointed a special circuit judge, Larry Starcher, to sit as circuit judge should one be needed in the case and to appoint special prosecutors. Judge Starcher appointed Andrew Fusco and Thomas Newbraugh as special prosecutors.

Magistrate Pedneau filed warrants against the plaintiff five days later without hearing three disinterested witnesses provided by the plaintiff. On March 19th, plaintiff filed an affidavit of bias and prejudice against Magistrate Pedneau. On March 20th, Magistrate Pedneau issued new warrants against the plaintiff. The warrants each charge a misdemeanor, including assault, trespass and the unauthorized carrying of a weapon. On May 11th, the Supreme Court of Appeals ruled that plaintiff's affidavit of bias and prejudice made it incumbent upon Magistrate Pedneau to re-

move himself from the case, and appointed another magistrate, Alvie Qualls, to handle proceedings in connection with the warrants issued by Magistrate Pedneau. Magistrate Qualls set a trial date of August 1 on the warrants before him. Plaintiff seeks to enjoin the prosecution based on those warrants.

Plaintiff has also filed a motion for the recusal of Judge Starcher with the Supreme Court of Appeals, alleging that Judge Starcher's anti–gun sentiments constitute grounds for recusal. Plaintiff asks that Judge Starcher be enjoined from hearing any aspect of the criminal case.

## II.

When asked to enjoin a state court proceeding, a federal court must squarely confront the doctrine of abstention originally enunciated in *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). This doctrine counsels against federal court intervention in a state court proceeding unless the refusal to intervene would result in great and immediate irreparable injury to the federal plaintiff. *Moore v. Sims,* 442 U.S. 415, 423, 99 S.Ct. 2371, 2377, 60 L.Ed.2d 994 (1979). It is founded on notions of equity and comity within our federal system, properly assuming that state proceedings provide a full and fair opportunity for the vindication of federal constitutional rights. *Kugler v. Helfant, supra,* 421 U.S. at 124, 95 S.Ct. at 1530; Note, Developments in the Law–Section 1983 and Federalism, 90 Harv.L.Rev. 1133, 1336 (1977). Although *Younger* dealt with federal court intervention in state criminal prosecutions, the doctrine has been extended far beyond the criminal arena to include other areas of particular concern to the states, including public nuisance statutes, *Huffman v. Pursue,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); contempt proceedings, *Juidice v. Vail,* 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); child abuse, *Moore, supra* ; and state efforts to control welfare programs,

---

1. Defendant Justice Richard M. Neely (now Chief Justice), *believing himself disqualified,* did not participate in the decision. The plain-

tiff's complaint also indicates that Justice Neely recused himself from the proceedings involving Prosecutor Skinner, discussed below.

*Trainor v. Hernandez,* 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977). In these cases, the Court held that district courts should not interfere once an action has begun which has at its heart an issue of particular importance to the state. "[T]he substantiality of the State's interest in its proceeding has been an important factor in abstention cases under *Younger* ... from the beginning." *Trainor, supra* at 448, 97 S.Ct. at 1920 (Blackmun, J., concurring). As will be discussed below, a state's interest in the integrity of its judiciary is extraordinary, as is the state's interest in the enforcement of its criminal statutes. Thus, the *Younger* doctrine bars federal intervention into all of the proceedings pending against the plaintiff in West Virginia's courts, unless one of the exceptions to *Younger* applies.

The exceptions to the *Younger* doctrine were most clearly articulated in *Huffman, supra,* where the court held that federal courts should interrupt state proceedings when (1) the state proceeding is motivated by a desire to harass or (2) is conducted in bad faith or (3) where a challenged statute is "flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it." *Huffman, supra,* 420 U.S. at 611, 95 S.Ct. at 1212 [quoting *Watson v. Buck,* 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1971)]. The recent abstention case of *Moore v. Sims, supra,* reaffirms the existence of the exceptions outlined in *Huffman* and discusses a fourth exception, extraordinary circumstances, mentioned also in *Younger* and discussed in *Kugler, supra.* Each of plaintiff's requests for relief, therefore, must be examined to determine if harassment, bad faith, flagrantly unconstitutional statutory provisions, or extraordinary circumstances are present.

### III.

Plaintiff's request for an injunction prohibiting the criminal prosecution against him rests primarily on the bad faith and harassment exceptions to the *Younger* rule.

Plaintiff acknowledges that the constitutionality of the statutes under which the warrants were issued is not in dispute.

Plaintiff argues that the series of events related above constitutes bad faith and harassment. He contends that the Chief Justice's transmittal of a disciplinary complaint to the Judicial Inquiry Commission, the appointment of a special magistrate and judge in response to the Preisslers' request, the time which elapsed between his hearing and the issuance of the opinion of the Supreme Court of Appeals, and the Supreme Court's refusal to recuse Judge Starcher or act on plaintiff's complaints regarding the warrants issued by Magistrate Pedneau after plaintiff filed his affidavit of bias and prejudice, constitute proof of harassment by the Supreme Court of Appeals. Such harassment and participation by the Supreme Court of Appeals, he maintains, make it impossible for him to have a full and fair adjudication of the criminal charges against him, in the Magistrate's Court, the Circuit Court, or the Supreme Court of Appeals.

But the facts as described by the plaintiff appear to the court to describe nothing more than the normal and proper course of events preceding a criminal complaint, if any criminal proceeding against a judge can be characterized as normal. When the Chief Justice receives notice of alleged misconduct by an attorney or a judge, the obvious recourse is to refer the matter to the commission responsible for investigating such complaints. The court perceives nothing improper or malicious in the appointment of a special magistrate to hear complaints as sensitive as criminal complaints against a judge, complaints which the magistrate in the judge's own town may feel unable to handle with the proper degree of circumspection and detachment. Since plaintiff, in his capacity as circuit judge, had dismissed Prosecutor Skinner from taking any actions related to the Preisslers, and a circuit judge was needed to appoint a special prosecutor to handle the complaints against the plaintiff (an appointment the plaintiff was obviously dis-

qualified from making), the Supreme Court of Appeals' appointment of Judge Starcher appears necessary and proper. Judge Starcher's appointment of special prosecutors followed in due course, and also appears free of any inappropriate motives.

Thus, the court finds no evidence of bad faith or harassment in the events as related by plaintiff. Even assuming, as plaintiff contends, that the warrants are deficient in some way or that Judge Starcher is predisposed against plaintiff's position (a contention which this court, on this record, finds meritless), it is clear that plaintiff will be able to raise those objections and any other alleged constitutional violations in the state proceedings against him. There is no reason for this court to intervene on those grounds.

Furthermore, the court does not perceive any extraordinary circumstances which would justify intervening in the state proceedings. Plaintiff cites *Kugler v. Helfant, supra*, for the proposition that bias constitutes an extraordinary circumstance which justifies intervention. But, in *Kugler*, the Supreme Court held that, even assuming as true plaintiff's allegations that several former justices and one sitting justice of the New Jersey Supreme Court were biased against the defendant and coerced him into giving grand jury testimony which resulted in an indictment against him, such bias and coercion did not constitute extraordinary circumstances and the federal courts should not intervene. *Kugler v. Helfant, supra.* Citing New Jersey rules calling for the mandatory disqualification of judges when even the appearance of impropriety existed, the Court held that, even if some former justices had been improperly involved in prior proceedings, the plaintiff's "claim that he cannot in fact obtain a fair hearing in the state–court system is without foundation." *Kugler, supra*, 421 U.S. at 129, 95 S.Ct. at 1533.

The court reaches the same conclusion here. West Virginia's Judicial Code of Ethics, Canon 3, sets rigid standards for insuring the impartiality of judges. This court has every reason to believe that the Canon's strictures will be followed, as they were in the dismissal of Magistrate Pedneau, if the defendants are in fact biased.

Accordingly, absent any persuasive factual allegations which support plaintiff's conclusory allegations of bad faith, harassment, and extraordinary circumstances, the court abstains and therefore declines to enjoin the state criminal prosecutions and the participation of Judge Starcher in those proceedings. *Younger v. Harris, supra.* Inasmuch as the state criminal proceedings are now in their early stages and inasmuch further as plaintiff is entitled to raise therein as a matter of right every constitutional claim or defense for which he now contends, this court in the exercise of its discretion directs that this action, insofar and insofar only as it seeks relief with respect to the state criminal prosecutions, be, and the same hereby is, ORDERED dismissed without prejudice.

IV.

The court turns to plaintiff's request for an injunction against the imposition of his six–month disciplinary suspension. Inasmuch as the West Virginia Supreme Court of Appeals has already issued its order directing plaintiff's suspension, action in the state courts can be said to have ended, although plaintiff's time for appeal of the state proceedings to the United States Supreme Court has not expired. 28 U.S.C. § 2101(c). Plaintiff argues that state proceedings, therefore, are not pending for abstention purposes, and that this court should not abstain, but should proceed to the merits of his claim.

 Plaintiff's argument brings into issue both the purpose of the *Younger* doctrine and the duration of *Younger's* restrictions on federal interruption of state proceedings. The *Younger* doctrine is, at its heart, a forum allocation rule. See Note, Developments in the Law: Section 1983 and Federalism (hereinafter Note), 90 Harv. L.Rev. 1133, 1274–1330 (1977). As discussed above, when federal issues can be raised either as a defense in ongoing state proceedings or offensively in a § 1983 action in

the federal courts, the *Younger* doctrine counsels federal deference to the state forum, in the interests of comity and federalism. *Steffel v. Thompson*, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974), requires that the state proceedings be pending, not just threatened. And subsequent Supreme Court opinions, written by Justice Rehnquist, the primary architect of the *Younger* developments, indicate that the federal courts should defer not only when the particular pending state proceeding provides an adequate forum for the resolution of the federal question, but also when further state appellate proceedings in which the issue can be raised are possible. "Virtually all of the evils at which *Younger* is directed would inhere in federal intervention prior to completion of state appellate proceedings, just as surely as they would if such intervention occurred at or before trial." *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 608, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975). The *Huffman* exhaustion rule simply requires the federal courts to abstain as long as state proceedings remain available to the federal plaintiff. Thus, once state proceedings have begun which offer, at any stage, an opportunity to raise the federal issue in defense or in any other fashion, the federal courts must abstain from considering that issue in a § 1983 action until the state proceedings are concluded. The state defendant must pursue to completion all existing state procedures before bringing a § 1983 action in federal courts.

Much judicial effort has been devoted to determining exactly when state proceedings begin for abstention purposes. *See Steffel, supra; Hicks v. Miranda*, 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975); and 17 Wright & Miller § 4253 (1978). *Huffman, supra*, and subsequent cases have indicated that abstention is also required in the middle portion of the state judicial process, after initial state proceedings against the

aspiring federal plaintiff have ended but before state appellate relief has been exhausted. *See Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) and *Moore v. Sims*, 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). But the Supreme Court has not directly resolved the question of when state proceedings end for the purposes of abstention. That is the issue before this court. Plaintiff has proceeded from the initial state inquiry all the way to, and including, a judgment of the Supreme Court of Appeals of West Virginia, the state's highest appellate tribunal. He raised his constitutional defenses in those proceedings.[2] Is it now permissible for this court to consider plaintiff's § 1983 action, or must the court abstain until review in the United States Supreme Court of the state court's judgment (and decisions on the constitutional issues) either is no longer possible or has been concluded adversely to plaintiff?

To answer the question, the court must consider the primary assumption underlying the *Younger* doctrine and those few cases which indicate an answer. The assumption is simple. The *Younger* abstention doctrine assumes that state courts provide a forum as competent and hospitable as the federal courts for resolving federal, particularly federal constitutional, issues.[3] *See Moore v. Sims, supra*, 442 U.S. at 430, 99 S.Ct. at 2380–2381; *Huffman, supra*, 420 U.S. at 610–11, 95 S.Ct. at 1211; Note, 90 Harv.L.Rev. 1133 at 1336 (1977). The federal courts will, therefore, defer to the states' judicial systems until their proceedings are concluded and a final judgment is reached. Federal proceedings may thereafter be commenced, although the state court's resolution of the constitutional issues may bind the federal courts under the doctrines of res judicata or collateral estoppel, and a collateral attack on the state court judgment itself will be barred in the

---

**2.** Review in the United States Supreme Court, by either appeal or certiorari, appears available to him. 28 U.S.C. § 1257.

**3.** This assumption is not universally approved. *See*, for example, Justice Brennan's dissent in

*Preiser v. Rodriguez*, 411 U.S. 475, 509, n.14, 93 S.Ct. 1827, 1846, n.14, 36 L.Ed.2d 439 (1973), and Fiss, Dombrowski, 86 Yale L.J. 1103 (1977).

federal courts by the full faith and credit statute, 28 U.S.C. § 1738.[4] *See Huffman, supra,* 420 U.S. at 606–07, nn.18 and 19, 95 S.Ct. at 1209–1210, nn.18 & 19; *Goodrich v. Supreme Court,* 511 F.2d 316 (8th Cir. 1975); 17 Wright & Miller § 4253 (1978); and Note, 90 Harv.L.Rev. 1133, 1330–54 (1977). Thus, it appears that this court should not consider plaintiff's constitutional claims until their resolution, in the context of the state proceedings, is final. For abstention purposes, such finality will not be achieved until review in the United States Supreme Court either has been concluded or is no longer possible.

Language in *Juidice, supra* and lower court opinions leads to the same conclusion. The plaintiffs before the Court in *Juidice* were subject to contempt orders issued by the County Courts of New York. They had never appeared in New York's state courts, and had not pursued state appellate remedies, at the time their § 1983 actions were filed. The Court noted that plaintiffs could have sought further relief in state courts, and discussed the relief available, concluding that should "the state courts ultimately have sustained the validity of the state statutory system, appellees would have had final recourse, available as of right, to this Court ...." *Juidice v. Vail, supra,* 430 U.S. at 337, n.14, 97 S.Ct. at 1218, n.14. *See also Goodrich, supra,* note 5. The Sixth Circuit reached a similar result in *Coogan v. Cincinnati Bar,* 431 F.2d 1209 (6th Cir. 1970). In that case, an attorney's § 1983 attack on his disbarment was dismissed on its merits on the grounds of res judicata and the anti-injunction statute, 28 U.S.C. § 2283. Before reaching the merits, the court found that the Ohio Supreme Court's judgment became

final "by reason of the fact that no petition for a writ of certiorari was filed by Coogan in the Supreme Court of the United States." *Coogan, supra* at 1210 (dictum).

█ Accordingly, the court holds that it must abstain until the opportunity for review of the highest state court's decision in the United States Supreme Court no longer exists, unless, of course, one of the exceptions to the *Younger* doctrine applies. In recognition of the volume of cases presented to the United States Supreme Court, the court does not, however, extend the *Huffman* exhaustion rule and require the plaintiff actually to file for relief in the United States Supreme Court. If plaintiff wishes to do so, he may elect to forego seeking Supreme Court review, let the judgment of the highest state court stand and pursue at that point his § 1983 action.

In arguing that abstention, if applicable in general, does not apply to this case in particular, plaintiff relies on the bad faith, harassment and flagrantly unconstitutional statute exceptions to the *Younger* doctrine. In support of his bad faith and harassment arguments, he cites the incidents referred to above relating to the disciplinary proceeding against him, and also refers to the allegedly vague statement of the charges against him, the failure of the Judicial Inquiry Commission to call the Preisslers to testify before the Judicial Review Board, the imposition of an allegedly excessive punishment, the meeting with the Preisslers (which resulted in the warrants for the criminal charges) while the Court was deciding the disciplinary case, and the alleged delay in withholding the Court's opinion until after the general election in which

---

**4.** Numerous cases have held, without citing the full faith and credit statute, that federal district courts cannot act as an appellate court and reverse state court disciplinary holdings, and have therefore declined to hear § 1983 actions which were tantamount to attacks on a judgment of disbarment, denial of admission to the bar, or other legal disciplinary proceedings. *Brown v. Board of Bar Examiners of State of Nevada,* 623 F.2d 605 (9th Cir. 1980); *Doe v. Pringle,* 550 F.2d 596 (10th Cir. 1976), *cert. denied,* 431 U.S. 916, 97 S.Ct. 2179, 53 L.Ed.2d 227 (1977); *Feldman v. State Board of Law Examiners,* 438 F.2d 699 (8th Cir. 1971); *MacKay v. Nesbett,* 412 F.2d 846 (9th Cir. 1969), *cert. denied,* 396 U.S. 960, 90 S.Ct. 435, 24 L.Ed.2d 425 (1969), *reh. denied,* 397 U.S. 1004, 90 S.Ct. 1111, 25 L.Ed.2d 417 (1970); *Ginger v. Circuit Court,* 372 F.2d 621 (6th Cir. 1967), *cert. denied,* 387 U.S. 935, 87 S.Ct. 2061, 18 L.Ed.2d 998 (1967); and *Woodard v. Virginia Board of Bar Examiners,* 454 F.Supp. 4 (E.D. Va.1978), *aff'd* 598 F.2d 1345 (4th Cir. 1979). *See also* Note, 90 Harv.L.Rev. 1133 at 1334, n.14 (1977).

plaintiff was a candidate for nomination for the Supreme Court of Appeals. Plaintiff contends that these actions are evidence of bad faith and harassment which have tainted the disciplinary proceedings in violation of his constitutional rights of due process and equal protection, and which justify this court's intervention at this late stage.

There is no question that state disciplinary proceedings like the one at issue here must protect the constitutional rights of the person subject to discipline. *See Baird v. State Bar of Arizona*, 401 U.S. 1, 91 S.Ct. 702, 27 L.Ed.2d 639 (1971); *Konigsberg v. State Bar*, 353 U.S. 252, 77 S.Ct. 722, 1 L.Ed.2d 810 (1957); and *Schware v. Board of Bar Examiners*, 353 U.S. 232, 77 S.Ct. 752, 1 L.Ed.2d 796 (1957). But it is equally clear that a state's interest in regulating its judiciary is so compelling that a federal district court should not intervene, unless one of the *Younger* exceptions applies. *Kugler, supra; Tang v. Appellate Division*, 487 F.2d 138 (2d Cir. 1973), *cert. denied*, 416 U.S. 906, 94 S.Ct. 1611, 40 L.Ed.2d 111 (1974); *Erdmann v. Stevens*, 458 F.2d 1205 (2d Cir. 1972), *cert. denied*, 409 U.S. 889, 93 S.Ct. 126, 34 L.Ed.2d 147 (1972) (disciplinary action against attorney); *Greene v. Virginia State Bar Association*, 411 F.Supp. 512 (E.D.Va.1976).

None of the *Younger* exceptions apply in this case. Plaintiff's allegations cannot support a conclusion of bad faith or harassment. The referral to the Judicial Inquiry Commission of notices of plaintiff's participation in the Preisslers' arrest, as discussed above, was regular and ordinary. Plaintiff received timely notice of the charges against him and hearings at all three tiers in the disciplinary process. The state's failure to call the Preisslers as witnesses in the Judicial Review Board proceeding was harmless, for the Preisslers were present in the room and plaintiff could have called them had he so desired. The passing of four months between plaintiff's argument in the Supreme Court of Appeals and the promulgation of their decision appears neither malicious nor improper in any respect. Nor does the court perceive proof of bad faith or harassment in the penalty assessed

by the Supreme Court of Appeals. Indeed, plaintiff's six–month suspension is significantly less onerous than the maximum suspension of one year without pay plus a $5,000.00 fine which the Judicial Review Board is empowered to recommend and, presumably, the Court could have imposed. Rules for Complaints Against Justices II. B.15.

Neither is there any flagrant or patent violation of express constitutional prohibitions in every clause, sentence and paragraph of Article 8, Section 8 of the West Virginia Constitution and the rules for disciplinary proceedings promulgated under it. To the contrary, the applicable laws show ample respect for the Constitution's requirements of due process. The standards of conduct, set forth in the Judicial Code of Ethics, are clear and detailed and provide much more guidance for judges than provisions authorizing dismissal "for cause," which have been upheld by other courts. *Napolitano v. Ward*, 317 F.Supp. 79 (N.D.Ill. 1970); *Friedman v. State*, 24 N.Y.2d 528, 301 N.Y.S.2d 484, 249 N.E.2d 369 (1969), *app. dismissed*, 397 U.S. 317, 90 S.Ct. 1121, 25 L.Ed.2d 337, and other cases at 53 A.L. R.3d 882 § 14.

Article 8, Section 8 authorizes the Supreme Court of Appeals to censure or temporarily suspend any judge, although it provides that a judge can be removed from office only by impeachment. Plaintiff argues that these provisions are inconsistent and permit the Supreme Court of Appeals to usurp the legislature's impeachment power. But the court finds that the distinction between temporary suspension and removal is sufficiently clear, and that the rules promulgated by the Supreme Court of Appeals reflect this clarity by limiting the Judicial Review Board's power to that of recommending suspensions of one year or less as well as a fine of $5,000.00 or less. Rules of Procedure of the Judicial Review Board, II.B.15. Presumably, this same limitation applies to the Court itself.

Plaintiff's allegations of defects in the procedure as applied to him are also insuffi-

cient to constitute an extraordinary circumstance exception to the *Younger* doctrine. Plaintiff admits in oral argument that he could have raised, and did raise all his constitutional objections in the hearings before the Judicial Review Board and the Supreme Court of Appeals. The Judicial Review Board's Rules of Procedure, particularly Rules for Complaints Against Justices II.B.5 and 11, make it plain that the West Virginia Rules of Civil Procedure apply in disciplinary proceedings. Under W. V. R. C. P. 12, all claims of law or fact can be raised in the state proceedings. Constitutional claims are no exception. "The only pertinent inquiry is whether the state proceedings afford an adequate opportunity to raise the constitutional claims." *Moore v. Sims, supra*, 442 U.S. at 430, 99 S.Ct. at 2381. Since the state proceedings afford more than ample opportunity to raise constitutional claims, there is no reason for this court to intervene until such proceedings have reached the stage at which appellate proceedings in the United States Supreme court either have been concluded or are no longer possible.

In declining to enjoin the imposition of the disciplinary suspension against the plaintiff, the court wishes to emphasize the extraordinary state interest in disciplinary proceedings which affect state judges. Disciplinary proceedings exist to vindicate the most fundamental of state interests, the need for a fair and impartial administration of justice for the benefit of all the state's citizens. Even the state's interest in enforcing its criminal laws for the protection of its citizens, recognized as a paramount interest in *Younger* and its progeny, is dependent in large measure upon the independence and integrity of the judges and lawyers who bear the responsibility for the vitality of the legal system. The West Virginia Supreme Court of Appeals' procedures for responding to questions concerning the state judiciary reflect a profound awareness of their responsibility for the judiciary's integrity, and a respect for the duty of the justices to insure the constitutional rights of their judicial compatriots while adjudicating complaints against the judiciary.

Accordingly, because of the unique state interest involved, the disruptive effect of federal intervention at this stage of the disciplinary proceedings, the absence of extraordinary circumstances or any conduct which arguably constitutes bad faith or harassment, and the apparent constitutional propriety of the disciplinary provisions of the state Constitution and the rules promulgated under them, the court abstains pursuant to the *Younger* decision. In the exercise of its discretion, the court retains this case on its docket but defers reaching the merits respecting the disciplinary proceedings, including questions regarding the applicability of the doctrines of res judicata and collateral estoppel, until the time has passed for plaintiff to seek review in the United States Supreme Court of the decision of the West Virginia Supreme Court of Appeals and, in the event such review is sought, until appellate proceedings in the United States Supreme Court have been concluded.

It is so ORDERED.